Richard R. RICHARD, Jr., et al.,

v.

HOECHST CELANESE CHEMICAL GROUP, INC., et al.

No. 5:00–CV–8.

United States District Court, E.D. Texas, Texarkana Division.

March 30, 2002.

Mitchell A Toups, Weller Green Toups & Terrell LLP, Beaumont, TX, Arthur Miller, Attorney at Law, Cambridge, MA, Robert Blakey, Notre Dame Law School, Notre Dame, IN, Damon Young, Lance Lee, Young Pickett & Lee, Texarkana, TX, for plaintiffs.

Nicholas H Patton, Robert William Schroeder, III, Patton Tidwell Sandefur, Texarkana, TX, Jerry L Mitchell, Jr, Kasowitz Benson Torres & Friedman LLP, Houston, TX, Paul M O'Connor, III, Kasowitz Benson Torres & Friedman, New York City, James N Haltom, Patton Haltom Roberts, McWilliams & Greer LLP, Texarkana, TX, David T Harvin, Vinson & Elkins, Houston, TX, Robert L Hodges, McGuire Woods LLP, Richmond, VA, Jim Charles Ezer, Schirrmeister Ajamie, Houston, TX, Kathleen Taylor Sooy, Crowell & Moring LLP, Washington, DC, for defendants.

## MEMORANDUM OPINION AND ORDER

FOLSOM, District Judge.

Plaintiff Richard has brought suit on behalf of himself and other similarly situated plaintiffs against Defendants Hoechst Celanese Chemical Group, Inc. and Hoechst Celanese Corp. (Hoechst), Shell Oil Co. d/b/a Shell Chemical Co. (Shell) and E.I. DuPont de Nemours & Co. (DuPont). On May 25, 2001, Plaintiffs and Defendant Dupont (the Settling Parties) made a joint motion for preliminary class certification and preliminary approval of settlement (Dkt. No. 95) (Settlement Motion). This motion is opposed by Defendants Shell and Hoechst, who argue, in their respective motions to dismiss, that the Court does not have jurisdiction to hear the case and that Plaintiff has failed to state a claim upon which relief can be granted. In a similar motion, DuPont moved for dismissal, arguing that this Court does not have jurisdiction to consider Plaintiff's due process claim, and that Plaintiff's due process and RICO claims should be dismissed for failure

to state a claim upon which relief can be granted.[1] DuPont's motion remains pending.

On June 18, 2001, the Court held a hearing on the Settlement Motion. After the hearing, the Court entered an Order instructing the parties to file briefs addressing the contested issue of federal court jurisdiction. On October 17, 2001, the Court held a hearing regarding the Court's jurisdiction. The Court now determines first that it has jurisdiction to hear the present case, second that the class cannot be certified for settlement purposes, and third that Defendants' motions to dismiss for failure to state a claim upon which relief can be granted are well taken and should be granted.

# I

## BACKGROUND

This is a class action lawsuit brought to recover damages for injury allegedly caused by the Defendants' manufacture, promotion and sale of polybutylene for use in residential and commercial plumbing systems for potable water. The class has not been certified. Plaintiff alleges that not only was polybutylene unsuitable for such use, but that the Defendants knew that their products were defective for this purpose.

Polybutylene resin (polybutylene) is a type of plastic that is produced as a by-product of oil refining. In the late 1970's, Defendant Shell developed flexible pipes made of polybutylene which were promoted and marketed for residential and commercial potable water plumbing systems. Joint fittings for polybutylene plumbing systems were made from resins developed by Defendants Hoechst and DuPont. The resin developed by Hoechst was marketed under the name "Celcon," and DuPont's was marketed as "Delrin." Defendants produced the materials used in the pipes, joints, fittings and resins that comprised polybutylene plumbing systems. Polybutylene systems were sold to the mobile

home industry, recreational vehicle industry, residential developers, plumbing contractors, and individuals. Promoters of polybutylene systems claimed that the product was superior to existing plumbing systems because it was lightweight, inexpensive, better able to withstand freezing temperatures, easier to install and purportedly enjoyed a lifetime of 50 years. Such representations notwithstanding, many polybutylene systems developed leaks when exposed to chlorinated water such as most municipalities use.

Plaintiff Richard brings this action on behalf of himself as well as a class of similarly situated persons pursuant to Fed.R.Civ.P. 23. The Class is defined in the Second Amended Complaint as follows:

> All Texas citizens, residents and entities authorised to do business in Texas that own plumbing systems in structures in Texas and elsewhere, in which there is polybutylene plumbing and over which Tennessee and Alabama courts lacked subject matter jurisdiction.[2]

> All U.S. citizens and entities that were excluded from the settlement classes of *Cox v. Shell Oil. Co.,* No. 18,844, 1995 WL 775363 (Tenn. Chanc. Ct., Obion City) and *Spencer v. Shell Oil Co.,* No. CV94–074 (Greene Cty., Ala.) because defects in their polybutylene plumbing systems were defined as non-qualifying.

> All U.S. citizens and entities that own structures containing polybutylene plumbing systems and have never participated in a polybutylene class action in a court of competent personal and subject matter jurisdiction.

(2nd Am.Compl.6–7).

Plaintiff brought claims under Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c), the Lanham Act, 15 U.S.C. § 1125(a), the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983[3], and common law tort. In briefings subsequent to

---

1. DuPont has not withdrawn its motion to dismiss, but will do so upon approval by the Court of the proposed settlement. (DuPont's Reply to Pla. Resp. to Def. Mot. Dism. at 1, Dkt. No. 125.)

2. There have been several cases involving polybutylene plumbing systems. The *Cox* and *Spenc-*

*er* cases, in Tennessee and Alabama, respectively, resulted in a putative joint national settlement.

3. Pla. Reply Memo re Prelim. Appr. of Class at 3, Dkt. No. 109.

the filing of the Second Amended Complaint, Plaintiff dropped his Lanham Act claim, leaving only his RICO and Due Process claims for consideration by this Court. *See* Pla. Memo. in Opp. to Def. Renewed Mot. Dism. 2nd Amend. Compl. at 4,( Dkt. No. 123).

On April 17, 2001, DuPont filed a renewed motion to dismiss Plaintiff's Second Amended Complaint under Rule 12. (Dkt. No. 65.) On May 25, 2001, the Settling Parties moved the Court to certify the class as to DuPont only, and further to grant preliminary approval of their Settlement Agreement. This motion was made without any retraction by DuPont of its motion to dismiss; instead, DuPont states that it will withdraw its motion to dismiss only after the Court has found that it has jurisdiction to hear the case.[4] (DuPont's Reply to Pla. Resp. to Def. Mot. Dism. at 1, Dkt. No. 125; DuPont's Reply to Shell's Resp. to Settlement Motion, Dkt. No. 111.)

Defendants Hoechst and Shell oppose preliminary approval of the Settlement Agreement. They argue first that the Court has not yet determined that it has jurisdiction to hear the case and second that there has been an insufficient showing at this point to warrant approval of the proposed settlement, even on a preliminary basis.

The parties all agree that the first question before this Court is whether or not the Court has jurisdiction to hear the case. As explained below, the Court finds that it has subject matter jurisdiction. Plaintiff and DuPont argue that the Court, after determining that it has jurisdiction, should preliminarily certify the class in order to allow the putative class members to settle with Defen-

dant DuPont. Defendants Hoechst and Shell, on the other hand, argue that the Court should dismiss the case for failure to state a claim upon which relief may be granted. Defendant DuPont has also filed a similar motion to dismiss. The disjuncture of the plans outlined above reveals the curiousness of Defendant DuPont's position. DuPont argues, by urging the Court to take the first course delineated above, that the Court should .find that it has subject matter jurisdiction over the instant case and then, pursuant to its jurisdiction, approve the Settlement Agreement. In so arguing, DuPont opposes the second course, that the Court should, in the case that it has subject matter jurisdiction, grant Defendants'—including DuPont's—motions to dismiss the case. The Court will first address the question of jurisdiction, then the question of preliminary class certification, and finally the question of the adequacy of the pleaded claim.

## II

### DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

■ Defendants have filed both 12(b)(1) and 12(b)(6) motions to dismiss. As a general rule, the district court should resolve a 12(b)(1) motion before the defendant's other challenges because the court must find that it has subject matter jurisdiction before it can determine any other issues. *See Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir.1994). For the reasons detailed below, the Court determines that it has subject matter jurisdiction; Defendants' motions to

---

4. At the October 17, 2001 hearing, DuPont's attorney clarified that while DuPont had filed a 12(b)(6) motion to dismiss the RICO claims, DuPont "never said that the Court does not have subject matter jurisdiction to take a look at these RICO claims." (Oct. 17, 2001, Trans. at 20–21.) DuPont's papers bear this message out. DuPont's April 17, 2001 "Renewed Motion to Dismiss Plaintiff's Second Amended Complaint" (Dkt. No. 89) reaffirmed previous filings on the subject, the most substantial of which was DuPont's October 31, 2000 "Memorandum in Support of its Rule 12 Motion to Dismiss Second Amended Class Action Complaint." (Dkt. No. 65.) In the earlier memorandum, DuPont argued that Plaintiff failed to state a RICO claim,

asserting that Plaintiff's RICO arguments failed the 12(b)(6) standard applied in *Summit*. (DuPont's Rule 12 Memo. re. Dism. 2nd Amend. Compl. at 5 (Dkt. No. 65).) Although DuPont did argue that the Court lacked jurisdiction, this was in regard to Plaintiff's due process claim. (Id. at 8.) There was one area of inconsistency, however. In DuPont's October 31, 2000 memorandum, DuPont argued that Plaintiff's RICO claim failed to meet the particularity requirements of Rule 9(b). (DuPont's Rule 12 Memo. re. Dism. 2nd Amend. Compl. at 5 (Dkt. No. 65).) In contradiction to DuPont's briefing, DuPont's attorney opined at the hearing that Plaintiff's RICO statement does overcomes the requirements of 9(b). (Trans. at 20.)

dismiss for lack of subject matter jurisdiction are therefore denied.

## A. Standard

■ In order to enjoy federal court jurisdiction under 28 U.S.C. § 1331, the plaintiff's cause of action must arise under the Constitution, laws, or treaties of the United States. The federal issue must arise in the complaint itself, and not from the plaintiff's anticipation of a defense based on the federal statute. *See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Louisville & Nashville RR v. Mottley* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

■ Plaintiff maintains that in determining subject matter jurisdiction, the signal question is not whether Plaintiff has alleged incontestable, or even probable, claims under 18 U.S.C. § 1964(c) (RICO), 28 U.S.C. §§ 1343(3) (redress right secured by the constitution) and 42 U.S.C. § 1983 (deprivation of constitutional right) [5]; rather, the question is whether Plaintiff's claims require the Court to construe federal statutes and therefore are contingent upon how those statutes are applied to the facts alleged. Because the Court must construe two federal statutes to adjudicate Plaintiff's claims for relief,[6] the Plaintiff argues that he has adequately alleged subject matter jurisdiction.

Plaintiff distinguishes the question of the Court's subject matter jurisdiction from the analysis necessary to consider a motion to dismiss under Rule 12(b)(6). Unlike a motion under 12(b)(6), Plaintiff argues, an inquiry into subject matter jurisdiction need not address the sufficiency of the allegations.

[I]t is not necessary to decide whether [Plaintiffs'] alleged cause of action against [Defendants] ... is in fact a cause of action on which [Plaintiffs] could actually recover. Instead, the test is whether the cause of action alleged is so patently without merit as to justify ... the court's dismissal for want of jurisdiction.

*Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 70, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978), *citing Hagans v. Lavine*, 415 U.S. 528, 542 n. 10, 94 S.Ct. 1372, 39 L.Ed.2d 577 ("Once a federal court has ascertained that plaintiff's jurisdiction conferring claims are not insubstantial on their face, no further consideration of the merits of the claim[s] is relevant to a determination of the court's jurisdiction of the subject matter.") (citations omitted.) The Court finds these arguments well taken. As the Supreme Court stated in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998):

It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction, *i.e.*, the courts' statutory or constitutional power to adjudicate the case... "[J]urisdiction is not defeated... by the possibility that the averments might fail to state a cause... of action on which petitioners could actually recover." Rather, the District Court has jurisdiction if "the right of petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another" unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." Dismissal for lack of subject matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise [so] completely devoid of merit as not to involve a federal controversy."

*Id.* at 89, 118 S.Ct. 1003 (citations omitted).

The inquiry into subject matter jurisdiction should not be an inquiry into the *merits* of a particular suit, beyond the broad consid-

---

**5.** Section 1983 creates a claim for relief; it does not grant a federal court jurisdiction to hear the claim. *Hagans v. Lavine*, 415 U.S. 528, 535, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). Therefore, for jurisdictional purposes, the Court considers only Plaintiff's RICO and § 1343(3) claims. *See* Pla. Memo in Law re Court's Subj. Mat. Juris. at 4 n. 2, Dkt. No. 117.

**6.** *See infra*, note 4.

erations of insubstantiality and frivolousness outlined by *Steel*. "[W]hen the plaintiff bases his cause of action upon an act of Congress, jurisdiction cannot be defeated by a plea denying the merits of the claim .... Unsuccessful as well as successful suits may be brought upon the act...." *Accord The Fair v. Kohler Die and Specialty Co.*, 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716 (1913). In federal question cases, the court has subject matter jurisdiction if, taking as true all the allegations of the complaint, alternative constructions of a federal statute are present, one of which sustains the claim, the other of which defeats it. *John Corp. v. City of Houston*, 214 F.3d 573, 576 (5th Cir.2000). The Court considers Defendants' objections to Plaintiff's RICO and Due Process claims below.

## B. RICO Claim

Defendants make two responses to Plaintiff's arguments in support of federal jurisdiction conferred by his RICO claims. First, Defendants concur that *Steel* controls in this case, but contend that Plaintiff's RICO claim under *Steel* is insubstantial and frivolous. Second, Defendants argue that Plaintiff lacks standing to sue in the instant case. The Court will address both of these arguments in turn.

### i. Substantiality of RICO Claim

■ Defendants argue the Plaintiff's RICO claim is wholly insubstantial because it was not included in Plaintiff's original complaint, and because the Fifth Circuit's decision in *Summit Properties, Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556 (5th Cir.2000), *cert. denied*, 531 U.S. 1132, 121 S.Ct. 896, 148 L.Ed.2d 802 (2001), forecloses it. As concerns Defendants' first protest, a plaintiff may amend his complaint as justice so requires; in this case, the Court granted Plaintiff leave to amend his Complaint. (October 2, 2000 Order, Dkt. No. 59). Therefore, the mere fact that Plaintiff's Complaint was amended to include RICO claims is not sufficient to demonstrate that Plaintiff's claims are insubstantial.

Defendants' arguments regarding the role played by *Summit*, however, have greater force. In *Summit*, the Fifth Circuit held that the owner of a structure with polybutylene plumbing could not maintain a RICO claim against the defendants unless he could show he personally heard and relied upon the alleged misrepresentations made the basis of his mail and wire fraud claims. *Summit*, 214 F.3d 556. Defendants argue that *Summit* is controlling in the instant case, not least because of the overwhelming similarities between the two cases in the identities of the Defendants and the substance of the claims brought against them.

Plaintiff argues that *Summit* is distinguishable from the instant case. Plaintiff notes that the element of reliance was specifically disavowed by the plaintiffs in the *Summit* decision, while in the instant case, reliance is specifically alleged. Second, and alternately, Plaintiff argues that he falls within the "target" exception articulated by *Summit*. Defendants refute Plaintiff's target exception argument by noting that both *Summit* and *Procter & Gamble Co. v. Amway*, 242 F.3d 539 (5th Cir.2001), limit the target exception to an instance in which a competitor was injured by reason of the Defendants' fraudulent misrepresentations to consumers that had the effect of diverting business away from the competitor. Defendant argues that Plaintiff is not a "target" within the meaning of those cases as a matter of law.

The Court will not here take up the substance of the parties' arguments; such consideration is addressed in Section IV of this Order. The Court does note, however, that in order to determine the validity of Defendants' arguments, the Court must consider the *merits* of the parties' arguments. Such consideration is beyond the mandate of the jurisdictional test articulated by *Steel*. *Steel* held that "[d]ismissal for lack of subject matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise [so] completely devoid of merit as not to involve a federal controversy." 523 U.S. at 89, 118 S.Ct. 1003 (citations omitted). Plaintiff's argument that the instant case is distinguishable from *Summit* on the critical

question of reliance, as well as his argument that he meets the "target exception" to the *Summit* case requires the Court to consider the *merit* of Plaintiff's arguments, a consideration which exceeds the limits of a court's jurisdictional inquiry. Because Plaintiff has adequately pled his RICO claim, the Court finds that Plaintiff has jurisdiction to bring the instant case before it.

### ii. Plaintiff's Standing

■ To establish standing, a plaintiff must demonstrate (1) an injury in fact, (2) traceable to the defendant's challenged conduct and (3) likely to be redressed by a favorable decision of the court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Breaux v. U.S. Postal Serv.,* 202 F.3d 820, 820–821 (5th Cir.2000). Here, Defendants contest element (2), proximate cause, relying on *Summit,* in which the owner of a structure with polybutylene plumbing could not maintain a RICO claim against the defendants unless he could show he personally heard and relied upon the alleged misrepresentations made the basis of his mail and wire fraud claims.

Plaintiff argues that Defendants perpetrated an unlawful scheme to misrepresent, and caused others to misrepresent, the properties of polybutelene plumbing systems, and that Defendants targeted the putative class members as victims. Plaintiff argues that these allegations establish a clear causal connection between the alleged injury and the Defendants' conduct. "[A] causal connection must exist between the alleged injury and the defendant's conduct." *Lujan* 504 U.S. at 559–60, 112 S.Ct. 2130; *Steel,* 523 U.S. at 102–103, 118 S.Ct. 1003; *Association of Community Orgs. for Reform Now v. Fowler,* 178 F.3d 350, 356 (5th Cir.1999). "Causation," for purposes of conferring Article III standing exists solely where the alleged injury is "fairly traceable to the defendant's allegedly unlawful conduct...." *Allen v. Wright,* 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984).

Defendants argue that Plaintiff's causation argument is effectively precluded by the *Summit* decision. However, as discussed above, Plaintiff has argued that *Summit* is distinguishable from the instant case. Furthermore, as discussed above, the Court cannot determine the applicability of *Summit* to the instant case without examining the *merits* of both Plaintiff's and Defendants' arguments. Any such examination, beyond the broad standard of insubstantiality and implausibility articulated by *Steel,* is improper at the threshold stage of jurisdictional inquiry. The Court therefore finds that the Plaintiff has standing to bring his claims.

### C. Due Process Claim

■ In Plaintiff's Second Amended Complaint, he brought claims of violations by the Defendants of 28 U.S.C. §§ 1343(3) (redress right secured by the constitution) and 42 U.S.C. § 1983 (deprivation of constitutional right) which he has continued, in subsequent briefings to the Court, to maintain. Plaintiff argues that "[t]he putative national class action settlements in *Cox* and *Spencer* purport to deny plaintiff and other members of the Class an opportunity to litigate their claims against the Polybutylene Group." (Pla. 2nd Amend.Compl.¶ 103.)

Plaintiff concedes that Section 1983 creates a claim for relief but does not grant a federal court jurisdiction to hear the claim. *Hagans v. Lavine,* 415 U.S. 528, 535, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); Pla. Memo in Law re Court's Subj. Mat. Juris. at 4 n. 2, Dkt. No. 117. This leaves the 28 U.S.C. §§ 1343(3) (redress right secured by the constitution) claim before the Court for purposes of determining jurisdiction. 28 U.S.C. §§ 1343(3) seeks:

> To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States ....

*Hagans,* 415 U.S. at 535, 94 S.Ct. 1372 (finding that Section 1343(3) therefore conferred jurisdiction upon the District Court to entertain the constitutional claim if it was of sufficient substance to support federal jurisdiction.)

Plaintiff brings his 28 U.S.C. §§ 1343(3) claim based on the alleged denial of rights affected by the *Cox* and *Spencer* settlements. (2nd Am. Compl. at 30.) However, contrary to Supreme Court authority, the relief requested by Plaintiff requests the Court to review the final order and judgment approving the Tennessee nationwide class action settlement. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), the Supreme Court held that, "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *Feldman*, 460 U.S. at 482, 103 S.Ct. 1303. As the Fifth Circuit has explained, "[i]t is axiomatic that a federal district court, as a court of original jurisdiction, lacks appellate jurisdiction to review, modify, or nullify a final order of a state court." *Lampkin–Asam v. Supreme Court of Florida*, 601 F.2d 760 (5th Cir.1979). Accordingly, Plaintiff cannot seek to have this Court review the final judgments of the *Cox* and *Spencer* Courts.

Even the settling Defendant DuPont, who argues that the Court has jurisdiction to hear this case, objects to jurisdiction under Section 1343(3). DuPont argues that Plaintiff's collateral attack on the *Cox* and *Spencer* judgments, although framed as a § 1983 claim, violates the *Rooker–Feldman* doctrine and that the Court does not have jurisdiction based on that claim. DuPont argues that the Court's jurisdiction must be based on RICO, since "jurisdiction of the ... Section 1983 claims is doubtful at best." (DuPont's Memo. re Juris. Issues at 2(Dkt. No. 124); *see also* DuPont's Memo. re Dism. 2nd Amend. Compl. (Dkt. No. 65); DuPont's Reply to Certification Mot. (Dkt. No. 111).) The Court finds that Defendants' motions to dismiss Plaintiff's due process claims for lack of subject matter jurisdiction are well taken and are therefore granted.

## III

### CLASS CERTIFICATION

On May 25, 2001, Plaintiff and Defendant DuPont moved the Court to certify the class as to DuPont only for purposes of settlement. The DuPont Settlement Class was defined as:

> All persons and entities who own or who previously owned or will own any improvements to real property or structures in the United States in which there is or was during the time of such ownership, a polybutelene plumbing system with acetal insert fittings.

(Jt. Mot. Prelim. Class Cert. Exh. A, Dkt. No. 95.) The Court held a hearing on preliminary approval of the class certification and preliminary settlement on June 18, 2001. At the hearing, the question of the Court's jurisdiction arose; without determining that the Court had jurisdiction to hear the case, the Court could not go forward to address class certification. The Court therefore ordered the parties to file briefs addressing the question of the Court's jurisdiction to hear the case. (June 19, 2001 Order (Dkt. No. 114).) Those briefs were heard before the Court on October 17, 2001. It is Plaintiff's and DuPont's position that the Court does have subject matter jurisdiction to hear Plaintiff's RICO claims, and further that the Court should approve the class certification for purposes of settlement. Shell and Hoechst argued that the Court does not have jurisdiction.

■ As discussed above, the Court finds that it does have subject matter jurisdiction to hear the case. Plaintiff and DuPont therefore request that the Court go on to approve the preliminary class certification; Defendants Shell and Hoechst (and DuPont) have filed 12(b)(6) motions to dismiss and desire the Court to next consider these motions. (Oct. 17, 2001 Trans. at 32.) However, before the Court can address these 12(b)(6) motions to dismiss, it must consider the question of class certification. *Miller v. Mackey International, Inc.*, 452 F.2d 424 (5th Cir.1971); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Federal Rule of Civil Procedure 23(e) provides that, "A class action shall not be dismissed or compromised without the approval of the court, and notice shall be given to all

members of the class in such a manner as the court directs." Typically, approval of a class action settlement involves a two-step process. First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel. Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.[7] *Manual for Complex Litigation, Third*, § 30.41. In the present case, however, no class has been certified, so the Court must first determine if the proposed settlement class is certifiable before it proceeds to make an initial fairness determination. *See Amchem v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

## A. Standard

Because making a fairness determination necessarily requires the Court to determine if the proposed class is a proper class for settlement purposes, the Court must examine the law regarding class certification and how that law is applied in the context of a proposed settlement-only class.

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context.

*Amchem*, 521 U.S. at 620, 117 S.Ct. 2231. Here Plaintiff and DuPont request preliminary class certification for the limited purpose of settlement.

▉ A district court may certify a class only if the plaintiff meets its burden to show that the proposed class and the proposed class representatives meet the four prerequisites in Rule 23(a) and one of three additional requirements in Rule 23(b). *See* FED. R. CIV. P. 23; *see also Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623 (5th Cir. 1999); *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996). A district court has "great discretion" in determining whether to certify a class, but the district court must make a reasoned and thorough analysis under Rule 23. *Mullen*, 186 F.3d at 624.

The four Rule 23(a) prerequisites include: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. FED. R. CIV. PROC. 23(a); *Amchem*, 521 U.S. at 613, 117 S.Ct. 2231. All four must be satisfied in order for the court to certify the class. Once the plaintiff satisfies these prerequisites, he must then satisfy the requirements of one of the three subdivisions of Rule 23(b). *See Amchem*, 521 U.S. at 614, 117 S.Ct. 2231. The requirements of these subdivisions include: (1) inconsistent adjudications would result in incompatible standards of conduct or any adjudication would bear heavily on the interests of non-parties; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; and (3) issues of law and fact predominate issues unique to individual class members, and maintaining the class action is the superior procedural vehicle. FED. R. CIV. P. 23(b)(1)-(3).

## B. Discussion

The Settling Parties have not articulated which subdivision of Rule 23(b) they satisfy; indeed, the Settling Parties articulate very little regarding the fairness, adequacy, and reasonableness of the settlement. In the hearing before the Court on June 18, 2001, Plaintiff explained that the motion for preliminary certification was the first step Plaintiff envisioned in a series of actions before the Court on route to a final class certification and settlement approval. Plaintiff argued that after making an initial presentation to the Court, he could later provide, "all of the information that the Court will want and will need in order to make a determination

---

7. In cases where a class is certified for settlement purposes only, notification of class certification under Rule 23(c)(2) may also be given to members along with 23(e) settlement notice for the sake of economy. *Manual for Complex Litigation, Third,* at § 30.41.

whether or not this settlement is fair and should be approved." (June 18, 2001 Trans. at 8.) However, as *Amchem* demonstrates, the Court must conduct a substantial inquiry relating to certification before it can certify a class, even for purposes of settlement.

■ Moreover, the Court need not address Plaintiff's motion for preliminary certification on the details of that motion, because the Court finds another significant obstacle to preliminary certification, and that is Fifth Circuit case law regarding certification of RICO claims. Without oppugning its determination that it has jurisdiction in the instant case, the Court notes that in the wake of *Summit* and another Fifth Circuit case, *Patterson v. Mobil Oil*, 241 F.3d 417 (2001), it may not be possible to certify a class in a RICO action within the Fifth Circuit.

In *Patterson,* plaintiff employees brought a class action asserting RICO claims. Plaintiffs asserted that defendant failed to comply with Texas law requiring an employer to obtain workers' compensation insurance in order to benefit from the bar of negligence suits by injured employees. Defendant appealed the certification order of the district court judge. The Fifth Circuit reversed the certification, finding that a fraud class action could not be certified when individual reliance would be an issue, and concluded that the district court erred as a matter of law in certifying the class because the predominance requirement could not be met. Citing *Summit,* the court held that each member of the putative class had to prove reliance upon defendant's alleged fraud in stating it was covered by workers' compensation insurance. To do that, each plaintiff would have to make an individual showing that she could have and would have sued defendant, but did not do so because the asserted false statements led her to believe her suit to be barred by the workers' compensation regime. The court held that while there may have been an issue of fact common to all class members, that question did not predominate over the question of whether or not each member of the class suffered a RICO injury.

Shortly before deciding *Patterson,* the Fifth Circuit decided *Bolin v. Sears Roebuck & Co.,* 231 F.3d 970 (5th Cir.2000). In *Bolin,*

the plaintiffs sought certification of a class under 23(b)(2), which requires a showing that (1) the behavior complained of is generally applicable to the class as a whole and (2) injunctive relief predominates over damages sought. *Bolin,* 231 F.3d at 975. The Fifth Circuit reversed the district court's certification of the class, finding that "the individual findings of reliance necessary to establish RICO liability and damages preclude not only b(2) certification of this class under RICO, but (b)(3) certification as well." *Id.* at 978.

*Patterson* and *Bolin* demonstrate the difficulty, if not the impossibility, of certifying a class for settlement purposes in the instant case. The commonality requirement mandated by Rule 23 cannot be met where plaintiffs also seek to fulfill the direct reliance requirements defined by *Summit. Patterson,* 241 F.3d at 419; *Bolin,* 231 F.3d at 978; *see also Castano v. American Tobacco Co.,* 84 F.3d 734 (5th Cir.1996)(stating that reliance should not be inferred by a district court because an accurate finding on predominance is necessary before the court can certify a class).

## IV

## DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. Standard

Under the Federal Rules of Civil Procedure, Rule 12(b)(6) motions to dismiss are appropriate where the defendant or counterplaintiff attacks the complaint because it fails to state a legally cognizable claim. A motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1137 (5th Cir.1992). The test for determining the sufficiency of a complaint under Rule 12(b)(6) was set out by the United States Supreme Court in *Conley v. Gibson:*

[I]n appraising the sufficiency of the complaint we follow, of course, the accepted

rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also *Grisham v. United States*, 103 F.3d 24, 25–26 (5th Cir. 1997).

## B. RICO Claim

For the purposes of determining the sufficiency of Plaintiff's RICO claim, the Court assumes that the facts alleged in Plaintiff's Second Amended Complaint and RICO Statement are true. The question is then whether or not Plaintiff can state a claim in RICO under such facts in the Fifth Circuit. For the reasons below, the Court holds that Plaintiff cannot.

### i. Summit Properties, Inc. v. Hoechst Celanese Corp.

In the Fifth Circuit's *Summit* decision, a group of plaintiffs who owned properties in which polybutylene plumbing systems were installed brought suit for violations of civil RICO against a group of defendant polybutylene manufacturers. That group included the Defendants of the instant case. The *Summit* plaintiffs contended that defendants manufactured and marketed polybutylene systems and components through a complex scheme to defraud building code approval officials, members of the building industry such as builders and plumbers, and other consumers.

The *Summit* plaintiffs conceded that they did not detrimentally rely on any of the defendants' allegedly fraudulent misrepresentations that served as the basis for the RICO claims. They argued that individual acts of reliance on the predicate mail or wire fraud are not necessary to establish the proximate causation prong of a claim under RICO. The Fifth Circuit disagreed, holding that *direct reliance on the misrepresentations* is required by the RICO statute, 18 U.S.C. § 1962, *et seq.*

*Summit* thoroughly considered the rationale for requiring reliance:

[In] a claim for fraud... the linkage is between the defendants' fraud and the injury. As a product travels in the stream of commerce, inherent defects are carried with it, but fraudulent statements are not.... The causal connection between a misrepresentation and a subsequent harm ... vanishes once the product travels beyond the entity who actually relied on the representation when making the purchasing decision. In other words, even if intermediary builders, plumbers, code officials, or prior owners relied on the defendants' alleged misrepresentations when choosing to use or approve [polybutylene] plumbing, that does not tell us whether the defendants' fraud proximately caused the plaintiffs' injuries, for which the defect was a producing cause. At best, any fraud during the sale of those products proximately injured only those initial purchasers who relied on the alleged misrepresentations, since the fraud facilitated a sale that might not otherwise have been made.

*Id.* at 560. Under such a rationale, the court contemplated only two groups able to bring actions under RICO: distributors who directly relied on defendants' representations, and competitor manufacturers injured by sales of defendants' defective merchandise. Plaintiffs in the instant case fall under neither category.

### ii. Discussion

Plaintiff argues that the instant case is distinguishable from *Summit* in two significant respects. First, Plaintiff argues that the plaintiffs in *Summit* conceded that there was no reliance, while Plaintiff here does not so concede, and second, Plaintiff argues that *Summit* never determined whether the plaintiffs in that case might fall under the "target exception" that it articulated.

Regarding reliance, the Court finds that the only notable distinction between the causation elements in *Summit* and the instant case are in name. While Plaintiff in the instant case alleges indirect reliance and the *Summit* plaintiffs conceded that there was no reliance, Plaintiff's Complaint does not demonstrate any fact situation which might distinguish his relationship with Defendants from those relationships which existed in

*Summit.* Plaintiff describes a number of allegedly false communications made by Defendants. Some of the communications were made among the Defendants; others were made to the manufacturers of the plastic piping in question. Not a single communication is alleged to have reached the Plaintiff, however. Instead, Plaintiff states, for example, that "The Polybutylene Group's [i.e., the Defendants'] promotion and sale of polybutylene systems, including fraudulent and false statements relied on by Plaintiff and other members of the Class, were intended to and did assure the plaintiff and Class members that the polybutylene systems were suitable for potable water plumbing systems." (2nd Amend. Compl. at 23.) But Plaintiff fails to specifically identify the allegedly fraudulent statements upon which he relied to his detriment. In fact, Plaintiff never states that he himself actually saw or heard a false communication. Nor does he contend that the intermediaries in this case—the manufacturers of plastic piping—communicated the alleged misrepresentations to the putative class.

As was the case in *Summit,* Plaintiff has not shown that there was any misrepresentation, or reliance thereon, made to Plaintiff *directly.* The necessity of direct reliance was the holding of *Summit.* As Defendant DuPont stated, prior to its request to settle with Plaintiff:

> The *Summit* decision is wholly dispositive of Plaintiff's five RICO counts.... Plaintiff's RICO statement shows that the facts on which Plaintiff relies with respect to DuPont are not only similar to those in *Summit,* they are identical .... The Fifth Circuit held as a matter of law in *Summit* that those allegations failed to state a claim and are subject to dismissal under Fed. R.Civ. P. 12(b)(6). That decision is binding here.

(DuPont's Memo. in Support of its Renew. Mot. to Dism. Pla. 2nd Amend. Compl. at 2–4.)

With respect to Plaintiff's "target exception" argument, the Court finds it similarly unpersuasive. Plaintiff argues that the Fifth Circuit did not expressly determine that the *Summit* plaintiffs did not qualify under the "target exception"; at the October 17, 2001 Jurisdiction Hearing, Plaintiff reasoned that the *Summit* court never reached the question of whether the plaintiffs were the "targets" of the defendants' allegedly fraudulent acts. As such, Plaintiff argued, the question of whether Plaintiff meets the target exception to the *Summit* holding is open to this Court.

As noted above, *Summit* contemplated two groups that might qualify for its "target exception": distributors who directly relied on defendants' representations, and competitor manufacturers injured by sales of defendants' defective merchandise. The *Summit* court took care to explain the rationale behind this exception, and then took equal care in explaining why such a rationale did not apply to the *Summit* plaintiffs:

> [W]hen an action poses a high and foreseeable risk on a third party, we may view the resulting injury as deliberate for the purpose of liability [considering why brokerage customers might recover under RICO for losses stemming from a series of fraudulent transactions].... In the present case, however, the plaintiffs' risks of injuries did not arise as direct and contemporaneous results of any alleged fraud, but instead arose only later, through the purchases of allegedly defective plumbing by transactions which were not tainted with fraud.

*Id.* at 561. The Court finds that the *Summit* decision itself addressed the unraised theory that the *Summit* plaintiffs might be a target exception to the proximate causation requirements found under RICO. The Settling Parties cite *Alpha/Omega Ins. Serv., Inc.,* 272 F.3d 280, 284 (7th Cir.2000) in defense of their "target exception" argument, arguing that the *Summit* plaintiffs first asserted the target exception argument in their motion for rehearing, and therefore the court did not reach the merits of whether the plaintiffs could proceed on a target theory. The *Alpha/Omega* Court found that "because a summary denial of a petition for rehearing does not explain the bases for the denial, it is 'insufficient to confer any implication or inference regarding a court's opinion relative to the merits of a case.'" *Id.,* citing *United*

*States v. Thomas,* 11 F.3d 732, 736 (7th Cir.1993). However, unlike the court in *Alpha/Omega,* the *Summit* Court did consider the substance of the issue in question, and found that the *Summit* plaintiffs did not fit the court's "target exception."

Plaintiff points to the Fifth Circuit's holding in *Procter & Gamble Co. v. Amway Corp.,* 242 F.3d 539 (5th Cir.2001) as an example of how *Summit's* "target exception" might be applied to the RICO claims of the instant case. In *Procter & Gamble,* the plaintiff P & G alleged that using the wire and the mail, defendant Amway attempted to lure P & G's customer's away by fraud. The fraud consisted of a rumor that P & G is a Satanic company whose president worships Satan and whose profits go in part to the church of Satan. The *Procter & Gamble* Court found, relying on the "target exception" articulated in *Summit,* that P & G's RICO claims based on Amway's alleged spreading of the Satanism rumor to lure customers from P & G were claims on which relief could be granted. The court determined that although P & G did not rely on the fraud, the situation fell into the narrow exception carved out by *Summit,* in which the *Summit* Court stated that "in the current case, for example, the defendant's competitors might recover for injuries to competitive position...." *Procter & Gamble,* 242 F.3d at 565 (citing *Summit,* 214 F.3d at 561).

The circumstances of *Procter & Gamble* are not those faced by Plaintiffs in the instant case: Plaintiff is not one of Defendants' competitors seeking to recover for injuries to competitive position. For this reason, the Court does not concur that the holding of *Procter & Gamble* pertains to the case at bar. Furthermore, as stated above, the case that bears a nearly identical resemblance to the case currently before the Court is the *Summit* decision itself. In that case, the Fifth Circuit articulated its "target exception" with total cognizance of the situation in which plaintiffs found themselves, and yet determined that plaintiffs did not fall within the "target exception." Between *Summit* and the case at bar, Plaintiffs have altered only one aspect of their case: here they allege reliance, whereas in *Summit* they did not. This allegation of reliance, however, is

not sufficient to overcome *Summit's* holding barring Plaintiff's claim.

### iii  Equity Relief

During the October 17, 2001, hearing, Plaintiff raised a new argument regarding the potential for equitable relief under RICO. Plaintiff suggested that an equitable remedy, following the Seventh Circuit case of *NOW v. Scheidler,* 267 F.3d 687 (2001), is applicable to the case at bar. (Oct. 17, 2001 Trans. at 16–18.) The Court requested briefing on the subject and the parties complied. After reviewing the briefing, the Court concludes that Plaintiff's arguments in equity do not assist the Court in determining whether Plaintiff has stated a claim upon which relief may be granted.

Plaintiff argues that *Scheidler* provides a basis for recovery that is wholly separate from both the "target exception" articulated in *Summit* and applied in *Procter & Gamble,* and from *Summit's* reliance requirement. According to Plaintiff, *Scheidler* gives Plaintiff a viable claim, not for damages relief, but for equitable recovery. Plaintiff concludes that thus *Scheidler* provides a separate basis for the Court's subject matter jurisdiction. (Pla. Memo. of Law in Resp. to Jan. 12, 2002 Order, at 4.) As discussed above, the Court has already determined that it has subject matter jurisdiction to consider Plaintiff's RICO claim. Thus the Court will not address Plaintiff's contention that *Scheidler* provides the Court with an alternate argument to determine that it has jurisdiction to hear the instant case. Instead, the Court is concerned with what *Scheidler* might add to the Court's assessment of the viability of Plaintiff's claim.

Relying on *In re Beef Indus. Antitrust Litig.,* 600 F.2d 1148, 1167 (5th Cir.1979), *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983) ("*AGC*"), and *Cargill, Inc. v. Monfort of Colorado, Inc.,* 479 U.S. 104, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986), Plaintiff argues that "[p]lainly, once Plaintiffs, at their option, claim only equity relief—*i.e.* not damages—the rationale for requiring reliance to

distinguish direct from indirect or remote claimants wholly disappears. Only *tradition-al* proximate cause between violation and injury need be shown." *Id.* (emphasis in original.) (Pla. Reply. Memo re Jan. 16, 2002 Order at 5–7 (Dkt. No. 170); Pla. Resp. to Sur–Reply re: Jan. 16, 2002 Order at 4 (Dkt. No. 172).) The equitable relief that Plaintiff asserts is disgorgement of profits. Plaintiff thus perceives his arguments in equity as an escape from the heavy burden regarding proximate cause imposed by *Summit.*

The Court does not find this argument well taken. While Plaintiff creatively lays out a jurisdictional history designed to show that seeking equitable relief under RICO makes the standing/proximate cause requirements (and their justifications) completely different than when damages are sought, the Court does not find this supposition well supported. Plaintiff argues that because claims for equitable relief present no risk of duplicative recoveries or complex allocation problems, in contrast to treble-damages actions, the strict requirements exacted in claims for damages are sometimes relaxed. In support of this contention, Plaintiff cites *Cargill's* determination that some factors considered in determining standing for damage relief (§ 4 of the Clayton Act) are not relevant when considering standing for equitable relief (§ 16 of the Clayton Act). *Cargill,* 479 U.S. at 111 n. 6, 107 S.Ct. 484. *Cargill's* holding, however, is not applicable to the case at bar. While the *Cargill* Court did find that, "the difference in remedy each section provides means that certain considerations relevant to a determination of standing under § 4 are not relevant under § 16," *id.,* that finding is misapplied by the Plaintiff to the case currently before the Court. Section 16 of the Clayton Act contemplates *threatened* loss or damage, and only equitable relief is available. It is not surprising that *future* loss or damage would mandate a different, even more relaxed, standing requirement than *actual* loss or damage (addressed by § 4 of the Clayton Act). Therefore, *Cargill* does not stand for the proposition that there is a relaxation of the standing requirements. Rather, it explores the ways in which distinct—although related—causes of action affording distinct

remedies rely on distinct standards. In contrast, Plaintiff has brought a claim for damages based on *actual* loss. In *Bolin,* 231 F.3d 970, the Fifth Circuit rejected a class certification requesting injunctive relief where it found that damage claims predominated. Finally, *Cargill* is naturally distinguished from the instant case because unlike the Clayton Act, the RICO statute does not expressly contemplate equity damages for private plaintiffs for actual *or* threatened loss.

Moreover, Plaintiff's foundational claim that equitable relief is permissible under RICO is tenuous at best. Plaintiff relies on *Scheidler* to tie its contentions together, although that case appears to be unique in its permission of equitable remedies under RICO. Even Plaintiff's partner in settlement, DuPont, criticizes Plaintiff's arguments under *Scheidler,* pointing out that:

> Before *Scheidler,* no federal court of appeals had held that private plaintiffs could seek injunctive relief under RICO. The Ninth Circuit has held that private plaintiffs may *not* seek such relief. *Religious Tech. Ctr. v. Wollersheim,* 796 F.2d 1076 (9th Cir.1986); *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1336 (1987).... Other federal courts have in *dicta* either rejected or expressed serious doubts about the proposition that private plaintiffs may seek injunctive relief under RICO (*citations omitted*).... For these reasons, this Court should not base its subject matter jurisdiction on the shaky ground provided by *Scheidler*....

(DuPont's Resp. to Jan. 16, 2002 Order (Dkt. No. 164).) To the extent that courts in the Fifth Circuit have considered equitable remedies under RICO, the idea has been dismissed. *See Bolin v. Sears Roebuck & Co.,* 231 F.3d 970, 977 n. 42 (5th Cir.2000)("There is considerable doubt that injunctive relief is available to private plaintiffs under RICO"); *In re Fredeman Litig.,* 843 F.2d 821 (5th Cir.1988)(expressly adopting the reasoning of *Wollersheim* in holding that RICO does not authorize private plaintiffs to seek an injunction that would freeze the assets of defendants); *Price v. Pinnacle Brands, Inc.,* 138 F.3d 602 (5th Cir.1998)(holding that because

plaintiffs were not able to allege sufficiently injury to their business or property proximately caused by the defendant's allegedly wrongful conduct, the Fifth Circuit did not need to decide whether injunctive relief was available to private RICO plaintiffs).

*Summit* provides a roadmap of the factors necessary to demonstrate that plaintiff has a viable RICO claim. One of the factors, and the aspect of the instant case contested by the parties, is the requirement that the plaintiff demonstrate direct reliance on a fraudulent misrepresentation. *Summit* forecloses the possibility that a plaintiff in the position where Richard finds himself might collect under RICO; *Scheidler* does not, so far as the Court can see, answer that restriction enacted by *Summit*. For the foregoing reasons, the Court finds that Plaintiff's RICO claim does not state a claim upon which relief can be granted.

## V

## CONCLUSION

For the reasons discussed above, it is hereby ORDERED that Defendants' motions to dismiss for lack of subject matter jurisdiction are hereby Denied and Plaintiff's motion to certify the class (Dkt. No. 95) is DENIED and Defendants' motions to dismiss for failure to state a claim (Dkt.Nos.87, 89, 91) are GRANTED.