IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 99-20627

---

THOMAS R. BOLIN; BILLIE F. BOLIN,

                                        Plaintiffs-Appellees,

STANLEY PATTON; ELENA SMITH; RALPH
FREEZE,

                                        Intervenor Plaintiffs-
                                        Appellees,

                      versus

SEARS, ROEBUCK & CO.,

                                        Defendant-Appellant.

---

Appeal from the United States District Court
For the Southern District of Texas

---

October 27, 2000

Before REYNALDO G. GARZA, JOLLY, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This interlocutory appeal under Rule 23(f) of the Federal Rules of Civil Procedure presents defendant Sears, Roebuck & Co.'s challenge to Rule 23(b)(2) certification of a class of bankrupt debtors alleging illegal post-bankruptcy collection practices by Sears. The Bolin plaintiffs raise a second issue: whether 28 U.S.C. § 1292(e), the enabling authority for Rule 23(f), is an unconstitutional delegation of Congress's power to confer jurisdiction on the lower federal courts. We uphold the

constitutionality of § 1292(e). We also vacate the certification order and remand to the district court to consider the certification of the class under Rule 23(b)(3) or reformulation of the class.

I

The Bolin class consists of consumers who purchased merchandise from Sears on credit, subsequently declared bankruptcy, and thereafter either made payments to Sears regarding a claimed security interest or pre-bankruptcy debt, had property repossessed or garnished, or incurred costs in connection with Sears's collection efforts. The district court found that the class numbers more than one million people.

The plaintiffs contend that Sears employed numerous illegal practices to coerce payment of otherwise-discharged pre-bankruptcy debt, including the development of and reliance on a chart inflating the value of collateral; offers of new credit on extortionate terms; failure to file redemption and other repayment agreements; unwarranted assertions of security interests; abusive litigation practices, including contesting bankruptcy discharges and filing separate state court actions post-discharge; and making coercive and threatening communications to debtors, both orally and in writing.[1] The suit seeks injunctive, declaratory, and monetary

_____

[1] At oral argument, counsel for Bolin described the overinflation of collateral value as the heart of the case.

2

relief under a variety of theories, including the Bankruptcy Code,[2] RICO,[3] and the Truth in Lending Act.[4]  The case follows on the heels of a narrower class action in which debtors complained of violations of the Bankruptcy Code regarding reaffirmation agreements.[5]

The plaintiffs moved for certification, and the district court certified the class under Federal Rule of Civil Procedure 23(b)(2). Sears petitioned for and was granted interlocutory review under Rule 23(f).  Sears attacks two aspects of the certification order: that the conduct alleged was generally applicable to the class and that the damage claims were incidental to the claims for injunctive relief.  Bolin challenges our jurisdiction, arguing that the enabling authority for Rule 23(f) exceeds Congress's power to delegate its jurisdiction-granting authority to the federal courts.

## II

We first address our jurisdiction.  Bolin challenges the constitutionality of Federal Rule of Civil Procedure 23(f), which allows a court of appeals to permit interlocutory review of a

---

[2] *See* 11 U.S.C. § 362 (automatic stay).

[3] *See* 18 U.S.C. § 1961 *et seq.*

[4] *See* 15 U.S.C. § 1601 *et seq.*

[5] *See Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182-86 (D. Mass. 1998) (discussing history of case).  That case was conditionally certified under Rule 23(b)(3) for settlement purposes, and Sears agrees here that the certification of such claims would be appropriate.

district court's grant or denial of class action certification.[6] Bolin argues that 28 U.S.C. § 1292(e), the authorizing authority for Rule 23(f), exceeds the scope of rulemaking power that Congress may permissibly delegate to the Supreme Court because only Congress, not the Court, may confer jurisdiction on the lower federal courts.

Section 1292[7] sets forth several specific instances in which the courts of appeals may hear interlocutory appeals, including of orders granting or refusing injunctions[8] and orders that the district court finds present controlling questions of law and whose immediate appeal may materially advance the termination of the litigation.[9]  Section 1292(e) then provides:

> The Supreme Court may prescribe rules, in accordance with section 2072 of this title, to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d).[10]

Rule 23(f) is promulgated pursuant to that authority.

---

[6] *See* Fed. R. Civ. P. 23(f).  The rule was adopted in the 1998 amendments to the Federal Rules.

[7] 28 U.S.C. § 1292 (2000).

[8] *See* 28 U.S.C. § 1292(a).

[9] *See* 28 U.S.C. § 1292(b).

[10] 28 U.S.C. § 1292(e).

The proposition that only Congress may confer jurisdiction on the lower federal courts is a basic constitutional principle.[11] At the same time, Congress may delegate to the courts the power to regulate their own practice.[12] The Supreme Court has upheld Congress's power to delegate to federal courts through the Rules Enabling Act the authority to make rules consistent with Congress's statutory mandates.[13] The Court has broadly interpreted this rulemaking authority to encompass activities within the "central mission" of the judicial branch.[14]

Here, it is clear that Congress intended to allow the Supreme Court to make new rules for the availability of judicial review, including the defining of finality for purposes of appeal.[15] The question is whether Congress's grant of authority to expand the circumstances in which interlocutory appeal is allowed constitutes

---

[11] *See* U.S. CONST. art. III, § 1; *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701-02 (1982).

[12] *See Wayman v. Southard*, 23 U.S.(10 Wheat.) 1, 42-43 (1825) (Marshall, C.J.).

[13] *See Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1, 9-10 (1941) (Congress may delegate its power to regulate the practice and procedure of the federal courts).

[14] *See Mistretta v. United States*, 488 U.S. 361, 388-90 (1989) (holding as permissible Congress's delegation of authority to the United States Sentencing Commission, part of the judicial branch, to promulgate the federal criminal sentencing guidelines).

[15] *See* 28 U.S.C. § 2072(c) (2000) (Rules Enabling Act).

a delegation of the power to confer jurisdiction, or rather rulemaking authority over the courts' own practices.

The Supreme Court has long fashioned various doctrines through case law and rules as to the timing of an appeal. For example, in 1949, the Court judicially created the *Cohen* doctrine, which allows a party to seek review of an order which finally determines an important claim of right separate from the merits of an action.[16] The Court has also upheld Federal Rule of Civil Procedure 54(b), which allows a district court to certify a judgment as final if the underlying order disposes of fewer than all of the issues or parties in an action;[17] the Court found the rule to be a valid exercise of its rulemaking authority and not contrary to 28 U.S.C. § 1291.[18] Although both the *Cohen* doctrine and Rule 54(b) create an opportunity for appellate review where none was available before, these creations were deemed permissible rulemaking by the Court. Finally, the timing rules for appellate review are generally set forth by rule, not by statute.[19]

---

[16] *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545-547 (1949).

[17] *See* Fed. R. Civ. P. 54(b).

[18] *See Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956); *Cold Metal Process Co. v. United Eng'g & Foundry Co.*, 351 U.S. 445, 453 (1956).

[19] *See*, *e.g.*, Fed. R. App. P. 3, 4 (regulating taking of appeals by right).

Thus, the Supreme Court may address the *timing* of appeals as interstitial rulemaking without affecting Congress's authority to determine the subject matter jurisdiction of the lower federal courts. Allowance for interlocutory appeal of a class certification order fits easily within this rubric. Even before the promulgation of Rule 23(f), parties could seek review of class certification orders through a writ of mandamus under the All Writs Act.[20] Bolin would distinguish mandamus from appeal under Rule 23(f) because mandamus is granted only under extraordinary circumstances. We fail to see any constitutional significance, however, in the frequency with which a rule results in a grant of interlocutory appeal: either the Supreme Court may permit interlocutory appeal under certain circumstances, or it may not.

In sum, none of these rules, including Rule 23(f), affect the matters reviewable by the courts of appeals. They affect only *when* those courts may hear the appeals, an issue apart from the right to confer original jurisdiction on the lower federal courts. We thus hold that § 1292(e) is a permissible delegation of rulemaking authority within the judiciary's central mission.[21]

---

[20] 28 U.S.C. § 1651. *See In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1295 (7th Cir. 1995); *In re Fibreboard Corp.*, 893 F.2d 706, 712 (5th Cir. 1990).

[21] We also reject Bolin's argument that § 1292(e) represents an impermissible repeal of Congress's statutory mandate under § 1292(b). *See Clinton v. City of New York*, 524 U.S. 417 (1998) (striking down line-item veto statute). There is no indication in § 1292(b) that Congress intended it to be an exhaustive list of the

III

We now address Sears's appeal of the grant of class certification, examining whether the certified class fits within the confines articulated under Rule 23(b)(2). To certify a class with respect to a claim, the district court must find that the putative class meets the requirements of Rule 23(a) and fits within one of the categories of 23(b). Sears does not challenge the district court's analysis under Rule 23(a); it contends only that certification under (b)(2) was an abuse of discretion.

The court may certify a class under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."[22] The Advisory Committee Notes and our cases make clear that injunctive or declaratory relief is not "appropriate" when the "final relief relates exclusively or predominantly to money damages."[23] Thus, Rule 23(b)(2) contains two

opportunities for interlocutory appeal; Congress was free to leave a window in which the Supreme Court could articulate additional grounds.

[22] Fed. R. Civ. P. 23(b)(2). Stated another way, this rule seeks to redress what "are really group, as opposed to individual injuries." *See Barnes v. American Tobacco Co.*, 161 F.3d 127, 143 n.18 (3d Cir. 1998). The uniformity of the injury across the class is what renders the notice and opt-out provisions of (b)(3) unnecessary. *Id.* at 143.

[23] Fed. R. Civ. P. 23(b)(2) Advisory Committee Notes. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411 (5th Cir. 1998) ("We . . . have adopted the position taken by the advisory

8

requirements: (1) behavior generally applicable to the class as a whole; (2) injunctive relief predominates over damages sought.

Sears challenges the certification under both requirements.

A

Sears argues that the plaintiffs allege only various illegal acts of debt collection, not actions affecting the class as a whole. Plaintiffs allege a "pattern or practice" by Sears. Such a "pattern or practice" must consist of a uniform policy allegedly applied against the plaintiffs, not simply diverse acts in various circumstances.[24] Certification is improper if the merits of the claim turns on the defendant's individual dealings with each plaintiff.

Here, while some of the challenged practices appear to present more of a uniform policy than others, several of the practices cited by Bolin, if proved, would present a case of conduct applicable to the class: Bolin alleges that the value chart, the credit offers, the practice of failing to file agreements with the bankruptcy court, and the form letters were promulgated by central authority and applied across the board. To the extent they are a centralized policy, they would be evidenced by Sears's policy manuals, customer accounts, and recovery records. These allegations

---

committee that monetary relief may be obtained in a (b)(2) class action so long as the predominant relief sought is injunctive or declaratory.").

[24] *See* Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1775 at 448 & n.3 (2d ed. 1986).

are analogous to the reaffirmation filing issue in the prior class action, which Sears concedes was properly certified. Thus, the plaintiffs have alleged behavior generally applicable to the class.

B

Sears also argues that the relief sought is predominantly monetary damages, not injunctive relief. In *Allison v. Citgo Petroleum Corp.*[25] we held that "monetary relief predominates . . . unless it is incidental to requested injunctive or declaratory relief."[26] We explained that incidental means that "damages [ ] flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief."[27] Thus, damages may be incidental when they are "capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate merits of each individual's case."[28] *Allison* reflects our concern that plaintiffs may attempt to shoehorn damages actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out

---

[25] 151 F.3d 402, 415 (5th Cir. 1998).

[26] *Id.*

[27] *Id.*

[28] *Id.*

10

protections.[29] The incentives to do so are large. Plaintiffs'
counsel effectively gathers clients—often thousands of clients—by
a certification under (b)(2). Defendants attempting to purchase res
judicata may prefer certification under (b)(2) over (b)(3). *Allison*
speaks to these realities.

To determine whether damages predominate, a court should
certify a class on a claim-by-claim basis, treating each claim
individually and certifying the class with respect to only those
claims for which certification is appropriate. It must examine
each claim asserted by the class in the context of the composition
of the class. The specific claims brought by the class identify the
types of relief available to the class.[30] The composition of the
class determines which of those types of relief the class is
eligible for and would benefit from.

Certification on a claim-by-claim, rather than holistic, basis
is necessary to preserve the efficiencies of the class action
device without sacrificing the procedural protections it affords to
unnamed class members. In a case such as this one, where claims for

---

[29] When monetary damages vary as to the individual plaintiffs,
class members may determine that they would rather have direct
rather than class representation. Rule 23(c)(2) guarantees this
right to undertake individual litigation by providing the
protections of notice and opt-out in (b)(3) class actions. *See* Fed.
R. Civ. P. 23(c)(2).

[30] The parties for their own reasons did not here analyze the
relief provided for by the statutes the plaintiffs invoke; but one
cannot determine whether computing "damages" requires
individualized computation without defining what "damages" are.

11

injunctive relief intermingle with claims for damages, certification of a (b)(2) class without individual treatment of the claims may deny unnamed class members the notice and opt-out protections of Rule 23(b)(3). On the other hand, denying certification or certifying under (b)(3) when (b)(2) certification is appropriate for part of the class eliminates the efficiencies in adjudication that Rule 23, and specifically (b)(2), create. Rule 23(c)(4) explicitly recognizes the flexibility that courts need in class certification by allowing certification "with respect to particular issues" and division of the class into subclasses.

We first review the claims for which the plaintiffs seek class certification. We then assess the interests of the members of the class in injunctive relief or damages. Finally, we decide whether certification under (b)(2) was appropriate for each claim.

(1)

The district court certified the class with respect to claims under five statutes: the automatic stay provision of the Bankruptcy Code,[31] the Fair Debt Collection Practices Act (FDCPA),[32] the Truth

---

[31] 11 U.S.C. § 362.

[32] 15 U.S.C. § 1692 *et seq.*

12

in Lending Act (TILA),[33] the Racketeer Influenced and Corrupt Organizations Act (RICO),[34] and the Declaratory Judgment Act (DJA).[35]

Section 362 of the Bankruptcy Code authorizes recovery of actual damages, costs, attorney's fees, and punitive damages in cases of willful violation of the automatic stay.[36] Plaintiffs also seek injunctive relief under this section.

The FDCPA authorizes the award of actual damages to class members, plus up to $1000 per named plaintiff, plus an amount determined by the court to the remainder of the class.[37] The court may also award costs and reasonable attorney's fees.[38] Plaintiffs also seek injunctive relief. Because defendant Sears does not quarrel with this claim, we will assume injunctive relief is available under the FDCPA.[39]

---

[33] 15 U.S.C. § 1602 *et seq.*

[34] 18 U.S.C. § 1961 *et seq.* (RICO).

[35] 28 U.S.C. § 2201-02.

[36] 11 U.S.C. § 362(h).

[37] 15 U.S.C. § 1692k(a)(1) & (a)(2)(B). The total additional recovery to unnamed class members is limited to the lesser of $500,000 or 1 percent of the creditor-defendant's net worth.

[38] 15 U.S.C. § 1692k(a)(3).

[39] We note, however, that although this circuit has not definitively ruled on the issue, courts uniformly hold that the FDCPA does not authorize equitable relief. *See Sibley v. Diversified Collection Services, Inc.*, 1998 WL 355492, at *5 (N.D. Tex. 1998); *Zanni v. Lippold*, 119 F.R.D. 32, 33-34 (C.D. Ill. 1988); *Gammon v. GC Services Ltd. Partnership*, 162 F.R.D. 313, 319 (N.D. Ill. 1995); and cases cited therein. *See also Sibley v. Fulton DeKalb Collection Service*, 677 F.2d 830, 834 (11th Cir.

TILA authorizes award to the class of actual damages plus an amount determined by the court.[40] Plaintiffs also seek injunctive relief under this statute.

RICO makes defendants liable for treble damages, costs, and attorney's fees.[41] Plaintiffs also seek injunctive relief under RICO. Again, we assume this to be available, as defendant Sears does not take issue with this claim.[42]

Finally, the plaintiffs seek a declaratory judgment under the DJA. The DJA, of course, authorizes a declaration that Sears has

---

1982) (stating in dicta that there is no injunctive relief under the FDCPA). *Washington v. CSC Credit Services Inc.*, 199 F.3d 263 (5th Cir. 2000), held that similar provisions in the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, do not create a private injunctive remedy and cited with approval the FDCPA cases. Of course, the unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion.

[40] 15 U.S.C. § 1640(a)(1) & (a)(2)(B). The total additional recovery is limited to the lesser of $500,000 or 1 percent of the creditor-defendant's net worth.

[41] 18 U.S.C. § 1964.

[42] There is considerable doubt that injunctive relief is available to private plaintiffs under RICO. *See Conkling v. Turner*, 18 F.3d 1285, 1296 n.8 (5th Cir. 1994) (listing cases). The only court of appeals to directly address this issue has held that RICO does not allow private injunctive relief, *see Religious Technology Center v. Wollerscheim*, 796 F.2d 1076, 1082-89 (9th Cir. 1986), and we have agreed in dicta. *See In re Fredeman Litigation*, 843 F.2d 821, 830 (5th Cir. 1988) ("We find the analysis contained in the *Wollersheim* opinion persuasive. . . . We need not decide, however, whether all forms of injunctive or other equitable relief are foreclosed to private plaintiffs under RICO.").

14

violated the foregoing laws.[43] But besides authorizing a declaratory judgment, the DJA does not create remedies otherwise unavailable to the plaintiffs.

Some of the damages authorized by these statutes are susceptible to objective, uniform computation. The supracompensatory damages authorized by the FDCPA and TILA require no individualized calculation, but are awarded to the class as a whole. Unwinding various settlements or refunding overcharges pursuant to a standard formula also may not require calculating the damages of each class member.[44]

Nonetheless, computation of some components of actual damages may require more individualized treatment. Determining expenditures made by class members in defending against Sears's actions would require individualized hearings. Further, a finding of RICO fraud liability requires a showing of reliance by each plaintiff.[45]

(2)

We now must consider the composition of the class to see which of these available remedies will benefit the class. The class is

---

[43] *See* 28 U.S.C. § 2201.

[44] The district court found: "Plaintiffs request the return of any money paid to Sears pursuant to an illegal reaffirmation agreement or settlement. In order to recover any damages the class members would be required to show proof of prior payments. The amount of damages is predetermined . . . ." Order, *Bolin v. Sears Roebuck and Co.*, No. H-97-1389, at 25 (S.D. Tex. June 6, 1999). We need not review the accuracy of that finding.

[45] *See Summit Properties Inc. v. Hoechst Celanese Corp.*, 214 F.3d 556, 558-60 (5th Cir. 2000).

15

composed of bankrupt debtors who, since 1988, have either paid money to Sears post-petition, had property repossessed or garnished, or have expended legal fees connected with Sears's collection efforts. Most of the class consists of individuals who do not face further harm from Sears's actions. These plaintiffs have nothing to gain from an injunction, and the declaratory relief they seek serves only to facilitate the award of damages.[46] Thus, the definition of the class shows that most of the plaintiffs are seeking only damages.

(3)

The district court abused its discretion in certifying the class under (b)(2) with respect to section 362 of the Bankruptcy Code. The vast majority of the class stands to benefit only from its damages provisions; even for the members of the class who would benefit from injunctive relief, some of the monetary relief sought would not be incidental to the injunctive relief.

Likewise, (b)(2) certification of the class with respect to the FDCPA was an abuse of discretion. Although much of the monetary relief available under the FDCPA can be easily computed, most of the class does not stand to benefit from any injunctive relief that

_____

[46] Sears also claims none of the class representatives would benefit from an injunctive remedy, as Sears's actions against them have ceased.  Sears was suing one representative in state court when the federal suit began, however. Although it abandoned that suit, that controversy may not have been mooted. The action was taken after the filing of this suit, and other class members may still face litigation by Sears.  *See Sosna v. Iowa*, 419 U.S. 393, 399-402 (1975).

16

may be available under that statute. Thus, whether the monetary relief is incidental to the injunctive relief sought is not an issue, since monetary relief is effectively the sole remedy sought.

The analysis for TILA is identical to that for the FDCPA. Rule 23(b)(2) certification with respect to that claim was an abuse of discretion.

The analysis for RICO parallels the section 362 analysis. Further, the individual findings of reliance necessary to establish RICO liability and damages preclude not only (b)(2) certification of this class under RICO, but (b)(3) certification as well.[47]

Nor was certification under the DJA proper. The mere recitation of a request for declaratory relief cannot transform damages claims into a Rule 23(b)(2) class action. Rule 23(b)(2) states that certification is proper for a class seeking "final injunctive relief or *corresponding* declaratory relief."[48] Thus, the declaratory relief must "as a practical matter afford[ ] injunctive relief or serve[ ] as a basis for later injunctive relief."[49] The extent to which the declaratory relief sought satisfies Rule

---

[47] In this case, individualized determinations of reliance would defeat the predomination requirement of Rule 23(b)(3). Bolin suggests proving reliance by having each plaintiff submit an affidavit, *see Chisolm v. TransSouth Fin. Corp.*, 184 F.R.D. 556, 565 (E.D. Va. 1999); this would not be practical here because of the size of the class.

[48] Fed. R. Civ. P. 23(b)(2) (emphasis added).

[49] Fed. R. Civ. P. 23(b)(2) Advisory Committee Notes. For discussion, see Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1775 at 462-63 (2d ed. 1986).

17

23(b)(2) is thus no greater than the extent to which the substantive statutes underlying the claim for declaratory relief satisfy Rule 23(b)(2). Since certification under none of the underlying statutes was proper, certification with respect to the DJA was also an abuse of discretion.

IV

In sum, we conclude that certification of the class with respect to each claim was an abuse of discretion. The fundamental flaw in the certification of each claim was that, for most of the class, damages will be the only meaningful relief obtained. Most of the class has an interest in individualized damages determinations that Rule 23(b)(2) does not protect. These class members—individuals who do not presently or imminently face action by Sears to recover pre-bankruptcy debts—must be certified under 23(b)(3), if at all.

We VACATE the district court's certification order and REMAND to the district court for reconsideration of the certification question. On remand, the district court may consider class certification under (b)(3) for those claims that meet the requirements of Rule 23. We do not today rule on whether certification of some claims under Rule 23(b)(3), or certification of a modified class with respect to some of the claims under Rule 23(b)(2) or (b)(3), would be proper.

VACATED and REMANDED.

18