In re INDUSTRIAL LIFE INSURANCE
LITIGATION.

Civ.A.No. MDL 1371.

United States District Court,
E.D. Louisiana.

April 1, 2002.

Bob F. Wright, Domengeaux, Wright, Roy & Edwards, Lafayette, LA, Gerald Edward Meunier, Gainsburgh, Benjamin, David, Meunier & Warshauer, New Orleans, LA, Donald Burnham Ensenat, New Orleans, LA, for Monumental Life Ins. Co., Industrial Life Insurance Litigation.

Stephen H. Kupperman, Stone, Pigman, Walther, Wittmann & Hutchinson, LLP, New Orleans, LA, Joel S. Feldman, Sachnoff & Weaver, Chicago, IL, Andrew J. Mytelka, Greer, Herz & Adams, Galveston, TX, R. Patrick Vance, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, Eric Jon Taylor, Hunton & Williams, Atlanta, GA, William B. Hill, Jr., Paul Hastings Janofsky & Walker, Atlanta, GA, Harold C. Hirshman, Sonnenschein, Nath & Rosenthal, Chicago, IL, William Joseph Hamlin, Bordelon, Hamlin & Theriot, New Orleans, LA, Thomas A. Casey, Jr., Raymond Joseph Salassi, Jr., Jones, Walker,

Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for Monumental Life Ins. Co., American National Life Ins. Co., Life Ins. Co. of Georgia, Unitrin Inc., Security Industrial Life Ins. Co. and Western and Southern Life Ins. Co.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is plaintiffs' Motion for Class Certification under Rule 23(b)(2) of the Federal Rules of Civil Procedure of a class composed of:

> All African–Americans who own, or owned at the time of policy termination, an industrial life insurance policy that was issued as a substandard plan or at a substandard rate.

Plaintiffs claim authority for such certification is anchored to Fed.R.Civ.P. 23(b)(2) because, they argue, they are primarily seeking equitable relief. The Court is not persuaded. For the reasons that follow, the motion is DENIED.

### I. Background

In these consolidated MDL proceedings, the plaintiffs aspire to certify a Rule 23(b)(2) class asserting that for decades the defendants, Monumental Life Insurance Company, The Western and Southern Life Insurance Company, and American National Life Insurance Policy,[1] have discriminated against African–Americans in the sale and administration of low-value life insurance policies (what they call "industrial life" insurance policies) in violation of 42 U.S.C. §§ 1981 and 1982. Generally, these policies have face amounts of $2000 or less, and require small weekly premiums. They assert that the companies sold black customers inferior policies at higher premium rates than they sold to white customers. Plaintiffs also claim that the defendants refused to sell black customers the same economically superior policies that they

sold to white customers and that they imposed limitations on the policy amounts and other benefits when selling to black customers.

### II. Law And Application

■ Parties seeking class certification must satisfy all of the Rule 23(a) prerequisites and the requirements of at least one of the categories of Rule 23(b). *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 975 (5th Cir. 2000). Aside from the obvious mandate of Rule 23(a), the plaintiffs claim the approbation of Rule 23(b)(2). Rule 23(b)(2) informs the propriety of class status if:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2). Rule 23(b)(2) groupings require that: 1) the class members must have been harmed in essentially the same way by defendants' acts; and (importantly) 2) injunctive relief predominates over any monetary damages that are sought. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir.1998). Because plaintiffs fail to satisfy the requirements of the Rule 23(b)(2) class they wish to certify, the Court need not decide whether plaintiffs satisfy the demands of Rule 23(a), although oral argument unveiled serious adequacy of representation issues as well.

### A. Monetary vs. Injunctive Relief

■ It is a truism to observe that where monetary relief predominates, certification under Rule 23(b)(2) is inappropriate. *Id.* In *Bolin v. Sears Roebuck & Co.*, 231 F.3d 970, the Fifth Circuit wrote:

> 'monetary relief predominates ... unless it is incidental to requested injunctive or declaratory relief.'...[I]ncidental means that 'damages[ ] flow directly from liability to

---

1. Over the years, each of the defendants have acquired other insurance companies which were created by prior acquisitions. They have also assumed blocks of in-force insurance policies which were issued by other insurance companies. Monumental currently administers policies issued by 200 different companies and Western

and Southern has administered policies issued by approximately 80 companies. American National also assumed a large amount of in-force policies which were previously issued by other insurance companies. These policies were issued over many years to an estimated 1 million policy holders.

the class as a whole on the claims forming the basis of the injunctive or declaratory relief.' Thus, damages may be incidental when they are 'capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances. Liability for incidental damages should not require additional hearings to resolve the disparate. merits of each individual's case.' [footnotes omitted].

*Bolin,* 231 F.3d 970, 975–76 (5th Cir.2000)(quoting *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir.1998)). In that same case, the Fifth Circuit also expressed its concern (and echoed the concern of this Court) "that plaintiffs may attempt to shoehorn damages actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out protections." *Id.* at 976. The Fifth Circuit pointedly added in *Allison* these very insightful comments:

> monetary relief 'predominates' under Rule 23(b)(2) when its presence in the litigation suggests that the procedural safeguards of notice and opt-out are necessary, that is, when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case.[2]

*Id.* at 413. *Bolin* and *Allison* focus intensely the concerns that became elevated in oral argument: this is a case in which individuality overrides any bland group-think, and money becomes the prime goal...not injunctive relief. Here, the plaintiffs say they seek: 1) an injunction prohibiting the collection of discriminatory premiums; 2) reformation of policies to equalize benefits; and 3) restitution of past premium overcharges or benefit underpayments. Determining whether this request is primarily for monetary or injunctive relief "involves consideration of the 'pragmatic ramifications of adjudication' and the effect of the relief sought, rather than any special attributes of the class involved." *Allison,* 151 F.3d at 416. The "pragmatic ramifications of adjudication" in this case are clear; many of plaintiffs' proposed class members,

such as those who have already had their policies adjusted by the defendants, or those whose policies have lapsed, or those on which death benefits have been paid, would not benefit in any way from the injunctive relief requested, and thus, the request for declaratory relief only serves to bootstrap a more genuine interest in an award of monetary damages.

The Court also emphasizes that the Supreme Court's decision in *Great–West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) is particularly instructive on this issue. In *Great–West,* the Supreme Court stated that "[A]n injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Id.,* 122 S.Ct. at 713. The Supreme Court tells us:

> Almost invariably ... suits seeking(whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.(citations omitted).

*Id.* Although not directly on point, *Great–West* provides persuasive authority for determining whether the real remedy is primarily for injunctive relief or monetary relief.

It must also be noted here that injunctive relief will not benefit anyone seeking to buy industrial life insurance in the future because the defendants no longer sell so-called industrial life insurance and have not done so since the mid–1980's. Furthermore, the requested monetary relief is not incidental to the request for injunctive relief because it does not flow directly from the class as a whole: many and a variety of hearings would be required to determine personalized harm to each individual plaintiff because of the mass of policies involved, differing underwriting practices among some 280 companies, differing built in benefits, account dividends, and age at policy issuance.

---

**2.** Plaintiffs have even suggested opt-out provisions could be applicable in this case.

The plaintiffs argue that Rule 23(b)(2) certification is especially appropriate for civil rights suits like this one. Yes. Civil rights suits may be well suited for 23(b)(2) certification. But where the request for relief is primarily and in actuality in the form of monetary relief, certification under 23(b)(2) fails. The true central relief sought by the plaintiffs in this case is for monetary damages. Rhetoric aside, that is the only meaningful relief that could be given. Because the "requested injunctive relief is designed primarily to facilitate and ensure the satisfaction of any monetary relief the Court might award,"[3] certification under Rule 23(b)(2) is inappropriate.

### B. Class Cohesiveness and Determination of Damages

■ In addition to requiring that the primary request for relief be injunctive, Rule 23(b)(2) also insists that the class be cohesive.[4] Cohesiveness is problematic because of the number of different insurance companies that issued the policies in question.[5] Although plaintiffs speak of only three defendants, the policies were issued from approximately 280 different insurance companies which all had different underwriting and pricing procedures, involving perhaps a million policy holders. Even though the plaintiffs argue that the polices issued were all identical, in order to correctly assess damages the Court would still have to consider: 1) the plaintiff's age at the time the policy was issued; 2) whether the policy had built in benefits, such as a loss of limb benefit; 3) whether the premium as calculated was race-neutral; and 4) whether any dividends were paid on any policies. The Court would also have to consider the policies that had lapsed or that had been adjusted by defendants.

There would need to be a determination of which policies had been adjusted, the amount of the adjustment and whether the adjustment was sufficient. All of this further illustrates the need to conduct personalized hearings that focus the idiosyncracies of each policy and each purchaser. The Court disagrees with the plaintiffs' rather generalized argument that the amount of monetary damages could easily be determined on a class-wide basis. That is what they must argue, but their argument is betrayed by the facts. The number of policies involved, the varying underwriting practices, all seem to make a grouping of monetary relief unrealistic at best.

Because the plaintiffs have also not satisfied the class cohesiveness requirement of Rule 23(b)(2), the Court declines to certify plaintiffs' proposed class. The Court must now turn to another serious concern.

### C. Statute of Limitations

■ The defendants also point out that the plaintiffs' request for class certification should be denied because the Court would have to hold individualized hearings on a seriously asserted statute of limitations issue. The plaintiffs over simplify when they respond that the Court could find on a class-wide basis whether the plaintiffs had constructive knowledge of the alleged discrimination. The Court does not agree and finds this response to have no merit. The defendants have introduced evidence that information concerning the insurance practices at issue has been readily available in the national and local media for many years. The information is in the form of newspaper and magazine articles and television reports from different areas of the country.[6] Thus, wheth-

---

3. *In re Jackson Nat'l Life Ins. Co. Premium Litig.,* 193 F.R.D. 505, 509 (W.D.Mich.2000).

4. *Allison,* 151 F.3d at 413; *Bolin,* 231 F.3d at 974; *Barnes v. American Tobacco Co.,* 161 F.3d 127, 143 n. 18 (3d Cir.1998).

5. The underlying premise of the (b)(2) class—that its members suffer from a common injury properly addressed by class-wide relief—"begins to break down when the class seeks to recover back pay or other forms of monetary relief to be allocated based on individual injuries." Thus, as claims for individually based money damages

begin to predominate, the presumption of cohesiveness decreases while the need for enhanced procedural safeguards to protect the individual rights of class members increases, thereby making class certification under (b)(2) less appropriate.

*Allison,* 151 F.3d at 413 (citations omitted).

6. Defendants refer to many news reports of alleged race-based pricing in insurance policies including: 1) a *Time Magazine* article from March 23, 1936; 2) a *Detroit News* article from September 26, 1936; 3) a *Milwaukee Journal*

er a plaintiff in Michigan, as compared to a plaintiff in Louisiana, had constructive notice, is a fact issue which needs to be determined individually and not on a class-wide basis.[7]

Moreover, different state laws have differing time-barring periods that would involve procedures that run afoul of the Fifth Circuit's strict scrutiny in *Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir.1996). States differ regarding issues like, for example, fraudulent concealment and overt misrepresentations. Plaintiffs had little persuasive enthusiasm in their response to the limitations concerns that have been raised. Their arguments did not adequately reach the obvious point made in the *Barnes* decision, that notice is a personalized fact issue.

Accordingly, because the plaintiffs' have failed to satisfy the requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure, their motion for class certification is DENIED.[8]

article from May 23, 1950; 4) a *Washington Post* article from March 1, 1983; 5) a Philadelphia Inquirer article from March 2, 1983; and 6) a 1979 special on *60 Minutes*.

7. *See Barnes v. American Tobacco Co.*, 161 F.3d 127, 149 (3d Cir.1998)("[D]etermining whether each class member's claim is barred by the statute of limitations raises individual issues that prevent class certification.").

8. The Court's decision today obviously does not deal with the serious merits of plaintiffs' grievances. In fact, the Court cannot overlook its

discomfort that one company's papers distinguish between "colored" persons and Caucasians, and that still another company had two premium grading policies, one for African–Americans and one for Caucasians. Defendants' response that these were state-permitted underwriting practices that involved socio-economic factors and not race-intended discrimination could be seen, preliminarily, as somewhat limp. But the Court cannot disregard the requirements of Rule 23 and its application to the facts before the Court.