[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 06-14828

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 28, 2008
THOMAS K. KAHN
CLERK

D.C. Docket No. 98-00210-CV-FTM-29SPC

KENNETH R. CHRIST, JR.,

                                                                Plaintiff-Appellee,

versus

BENEFICIAL CORPORATION,
BENEFICIAL FLORIDA, INC.,
BENEFICIAL MANAGEMENT CORPORATION
OF AMERICA,
BENEFICIAL INSURANCE  GROUP, INC.,
WESCO INSURANCE COMPANY,
BENEFICIAL INSURANCE AGENCY OF NEVADA,
WILMINGTON PROPERTY AND CASUALTY,

                                                                Defendants-Appellants.

_____

No. 07-10246

_____

D. C. Docket No. 98-00210-CV-FTM-29-SPC

KENNETH R. CHRIST, JR.,
on behalf of himself and all
others similarly situated,

Plaintiff-Appellee,

versus

BENEFICIAL CORPORATION,
BENEFICIAL MANAGEMENT CORPORATION OF AMERICA,
BENEFICIAL INSURANCE GROUP, INC.,
BENEFICIAL INSURANCE AGENCY OF NEVADA,
WESCO INSURANCE COMPANY,
WILMINGTON PROPERTY AND CASUALTY INSURANCE COMPANY,
n/k/a Wesco Insurance Company,
BENEFICIAL FLORIDA, INC.,
BFC INSURANCE AGENCY OF NEVADA,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida
_____

**(October 28, 2008)**

Before TJOFLAT, ANDERSON and HILL, Circuit Judges.

TJOFLAT, Circuit Judge:

Plaintiff borrower, Kenneth R. Christ Jr., sued his lender, Beneficial Florida,

Inc. ("BFI"), and a number of affiliated corporations for violating the Truth in

Lending Act ("TILA").  Christ alleged that BFI listed a fee for non-filing

2

insurance ("NFI") in the wrong column of a disclosure form. The district court

certified a class of plaintiffs represented by Christ, granted summary judgment on

the merits in favor of the plaintiff class, and awarded injunctive relief and over

$22 million in restitution or disgorgement pursuant to the Declaratory Judgment

Act. We vacate the class certification and the award of injunctive relief and

restitution or disgorgement. Because this leaves the plaintiff class without a

remedy, we do not reach the question of whether the district court erred by

granting summary judgment for the plaintiff class on the merits.

I.

On September 21, 1994, BFI issued to Christ a consumer loan in the amount

of $1,954.55. The loan was secured by "Certain Household Goods" and a "Motor

Vehicle." The disclosure form indicated that BFI charged Christ $14 for a "Non-

Filing Insurance Premium," which was listed as a separate item under "Itemization

of Amount Financed."[1] BFI bought the NFI policy from Wesco Company

("Wesco"). The policy covered losses that resulted when a lender's failure to

---

[1] Non-filing insurance is sometimes purchased by lenders in lieu of filing a Form UCC-1 Financing Statement. Instead of filing a UCC-1 to perfect its interest in the collateral, the lender purchases NFI to insure against the risk that another creditor will obtain priority over the lender's interest in the collateral. See In re Consol. Non-Filing Ins. Fee Litig., 195 F.R.D. 684, 688 (M.D. Ala. 2000). In either case—whether perfecting or insuring its security in the borrower's collateral—the lender usually passes the cost of filing the UCC-1 or paying an insurance premium on to the borrower.

perfect its security interest in collateral prevented the lender from repossessing the collateral, retaining proceeds from the collateral, or otherwise enforcing its rights. Pursuant to Florida law, the policy form and premium rate had been approved by the Florida Department of Insurance (the "Department"), now known as the Florida Office of Insurance Regulation.[2]

On May 19, 1998, Christ brought suit under TILA in the Middle District of Florida. Christ sued BFI and a number of its affiliates, Beneficial Corporation ("Beneficial"), Beneficial Management Corporation of America ("BMCA"), Beneficial Insurance Group, Inc. ("BIGI"), Wesco, BFC Insurance Agency of Nevada ("BFCIA"), and Wilmington Property and Casualty Company n/k/a Wesco.[3] He claimed that the NFI premium should have been disclosed in the "Finance Charge" column of the disclosure form rather than the "Amount Charged" column because (1) the NFI premium was not for "insurance," and alternatively, (2) even if the NFI premium was for insurance, it was not for non-filing insurance. The complaint sought actual damages, statutory damages, a permanent injunction prohibiting the practice of purchasing NFI and charging NFI

---

[2] Christ fell behind on his payments and took out a second secured loan from BFI in October 1995 to refinance his first loan. BFI did not charge an NFI fee.

[3] The district court effectively found that Beneficial was the parent company of BFI and the its other affiliates. Christ also named American Centennial Insurance Company as a defendant, but the court dismissed it upon the parties' joint motion.

premiums, a declaratory judgment, an accounting, and disgorgement.[4]

A month later, the Judicial Panel on Multi-District Litigation ("MDL") transferred the case to the Middle District of Alabama for consolidated pretrial proceedings with similar cases. Christ then moved under Federal Rule of Civil Procedure 23(b)(2) for certification of a nationwide class of borrowers who were charged an NFI fee by any of Beneficial's consumer lending subsidiaries. Christ also moved for partial summary judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201. He sought a declaration that his claims were not precluded by the McCarran-Ferguson Act, 15 U.S.C. §§ 1012 et seq., and that defendants violated TILA's disclosure requirements. Defendants filed oppositions to Christ's motions and a motion for summary judgment.

On August 24, 2000, the MDL court entered an order conditionally certifying an injunctive class under Rule 23(b)(2). It "deem[ed] Beneficial's consumer finance and insurance subsidiaries as its alter ego," and it accordingly pierced the corporate veil of BFI to its parent Beneficial and then to Beneficial's other subsidiaries, BMCA, Wesco, BIGI, and BFCIA. See In re Consol. Non-Filing Ins. Fee Litig., 195 F.R.D. at 690. The court conditionally certified Christ

---

[4] Several weeks later, on June 29, 1998, Christ obtained a third secured loan from BFI and was again charged $14 for an NFI premium.

as the representative of a class of "all persons in the United States who were charged a fee for non-filing insurance by one of the consumer finance subsidiaries of the Beneficial Corporation at anytime from May 19, 1994 to the present." Id. at 696. Significantly, the court held that "[i]njunctive and declaratory relief are available under TILA," id. at 692, and that "it is TILA, not state law, that determines what may be charged and disclosed as an 'amount financed,' as opposed to a 'finance charge.'" Id. at 693. On February 26, 2001, the MDL court denied defendants' motion for summary judgment and granted summary judgment to the plaintiff class with respect to the McCarran-Ferguson Act and TILA. It remanded the case to the Middle District of Florida on July 23, 2002.[5]

On December 17, 2002, the district court ordered an accounting in part to "determine the amount due to the Plaintiff class as restitution for Defendants' violation of the Truth in Lending Act." The district court also conducted a jury trial "on the issue of alter ego, as it related to Beneficial Corporation, Beneficial Management Corporation of America, and their subsidiaries." On July 9, 2003, the jury found that "the plaintiff has carried its burden of proving that probably for purposes of non-filing insurance, the subsidiaries of Beneficial Corporation were

---

[5] The same judge who presided over the MDL litigation also sat by designation in this case.

6

its alter ego."

The district court subsequently conducted a separate bench trial on damages. During the trial, class counsel withdrew its demand for statutory damages and conceded that because there was no detrimental reliance, class members were not entitled to actual damages. Christ v. Beneficial Corp., No. 2:98-cv-210-JEF-SPC, 2006 U.S. Dist. LEXIS 58448, at *9 (M.D. Fla. Aug. 17, 2006); see Turner v. Beneficial Corp., 242 F.3d 1023, 1024 (11th Cir. 2001)(en banc)(holding that detrimental reliance is an element of a TILA claim for actual damages). This left only the question of restitution or disgorgement damages. On August 17, 2006, invoking the Declaratory Judgment Act, the district court awarded to the plaintiff class injunctive relief and over $22 million as restitution or disgorgement of the NFI fees. Id. at *12-14. Following the entry of final judgment against them, the defendants appealed.[6]

We vacate, in turn, the district court's orders (1) certifying the class of plaintiffs under Rule 23(b)(2) and (2) awarding injunctive relief and restitution or disgorgement.[7]

---

[6] On appeal, defendants do not dispute the facts found by the district court.

[7] We do not address the defendant's other claims of error—including their claim that the district court erred by granting the plaintiffs summary judgment on the merits—because our disposition of these appeals renders this unnecessary.

II.

The MDL court certified a nationwide class of plaintiffs under Rule 23(b)(2), which provides for such a class only if the defendant has "acted . . . on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). TILA does not expressly provide for private injunctive relief, but neither does it expressly preclude it. The district court inferred from TILA's silence that TILA provides private injunctive relief. We disagree.

A.

"[W]ith rigorous regard for providing consumers with full disclosure of the terms and conditions of credit purchases, Congress fashioned an elaborate system of remedies and penalties to effectuate compliance with the Truth in Lending Act and to redress grievances stemming from its violation." Sosa v. Fite, 498 F.2d 114, 117 (5th Cir. 1974).[8] First, Congress designated certain federal agencies, including the Federal Trade Commission, as the primary enforcement agencies of TILA, with the power to enforce compliance through "[a]ll of [its] functions and powers," including orders of restitution. 15 U.S.C. § 1607(a)–(c); see Turner v.

---

[8] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Beneficial Corp., 242 F.3d 1023, 1025 & n.4 (11th Cir. 2001). Second, Congress "impose[d] criminal liability on persons who willfully and knowingly violate the statute." 15 U.S.C. § 1611.

Congress also "creat[ed] a system of 'private attorney generals,'" permitting "aggrieved consumers to participate in policing the Act." Thomas v. Myers-Dickson Furniture Co., 479 F.2d 740, 748 (5th Cir. 1973), superseded on other grounds, 15 U.S.C. § 1640(g), as recognized in Turner v. Firestone Tire & Rubber, 537 F.2d 1296 (5th Cir. 1976). The parameters of relief available to private litigants, delineated in 15 U.S.C. § 1640(a), include actual damages, statutory damages,[9] and attorney's fees and costs. TILA also permits certain other forms of relief for specific types of loans: private litigants with loans subject to the Home Ownership and Equity Protection Act may seek the recovery of finance charges, 15 U.S.C. § 1640(a)(4), and private litigants with loans secured by real property used as a principal dwelling may seek the remedies of rescission and restitution. 15 U.S.C. § 1635(a)–(b)(providing for right of rescission and restitution in the case of a loan secured by an interest in "any property which is

---

[9] Statutory penalties of "twice the amount of any finance charge in connection with the transaction" range from $100 to $1,000 (or $400 to $4,000 for loans secured by real property). 15 U.S.C. § 1640(a)(2)(A), as amended by The Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, § 2502, 122 Stat. 2654, 2857 (July 30, 2008).

used as the principal dwelling of the person to whom credit is extended").

Furthermore, Congress has from time to time "amended TILA to ensure that it provides for a fair balance of remedies." Turner, 242 F.3d at 1025. For instance, it amended TILA in 1974 to create a statutory cap on class action damages. 15 U.S.C. § 1640(a)(2)(B)(limiting the total recovery "in any class action or series of class actions arising out of the same failure to comply by the same creditor" to "the lesser of $500,000 or 1 per centum of the net worth of the creditor").[10] Most recently, Congress upped the statutory damages for certain credit transactions "secured by real property or a dwelling." The Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289, § 2502, 122 Stat. 2654, 2857 (July 30, 2008).

B.

Where Congress has provided a comprehensive statutory scheme of

_____

[10] In Bowen v. First Family Fin. Servs., Inc., 233 F.3d 1331 (11th Cir. 2000), we explained that

> [t]he reason Congress amended § 1640 is that the previous mandatory minimum statutory damage award of $100 for individuals threatened creditors with 'horrendous' class action liability for mere technical violations of the statute, and the prospect of that result had made courts reluctant to certify TILA claims for class treatment. Through the 1974 amendments, Congress sought to protect the financial viability of creditors by capping the amount of statutory damages in a class action, which would make courts less reluctant to certify class actions involving such claims.

Id. at 1337 (citation omitted).

remedies, as it did here, the interpretive canon of expressio unius est exclusio alterius applies. See Alexander v. Sandoval, 532 U.S. 275, 290, 121 S. Ct. 1511, 1521–22, 149 L. Ed. 2d 517 (2001)("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."); Transamerica Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 19, 100 S. Ct. 242, 247, 62 L. Ed. 2d 146 (1979)("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."). Because we do not expect Congress to "expressly preclude" remedies, we do not read TILA to confer upon private litigants an implied right to an injunction or other equitable relief such as restitution or disgorgement. See Perrone v. Gen. Motors Acceptance Corp., 232 F.3d 433, 439 (5th Cir. 2000)("If Congress had meant for restitution to be the measure of actual damages, it could have easily said so in [TILA]. It did not. The fact that restitution is an available remedy for some purposes does not mean that Congress intended it to be the measure of all other damages."). The categorical language of the statutory cap on damages likewise admits of no exception. Because injunctive relief is not a remedy available under TILA to Christ and the plaintiff class, Rule 23(b)(2) certification under TILA was improper. See Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 977 n.39 (5th Cir. 2000) ("Of course, the

11

unavailability of injunctive relief under a statute would automatically make (b)(2)

certification an abuse of discretion.").

Christ's claim under the Declaratory Judgment Act does not create a basis

for class certification under Rule 23(b)(2) if none exists under TILA. The relief

sought under the Declaratory Judgment Act is essentially a declaration of liability

under TILA, and can only "lay the basis for a damage award rather than injunctive

relief." 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and

Procedure § 1775 at 59–60 (3d ed. 2005).[11] Accordingly, we vacate the MDL

court's order of class certification.[12]

---

[11] That is,

> [t]he mere recitation of a request for declaratory relief cannot transform damages claims into a Rule 23(b)(2) class action. Rule 23(b)(2) states that certification is proper for a class seeking 'final injunctive relief or corresponding declaratory relief.' Thus, the declaratory relief must 'as a practical matter afford[] injunctive relief or serve[] as a basis for later injunctive relief.' The extent to which the declaratory relief sought satisfies Rule 23(b)(2) is thus no greater than the extent to which the substantive statutes underlying the claim for declaratory relief satisfy Rule 23(b)(2).

Bolin, 231 F.3d at 978-79 (emphasis and alterations in original).

[12] Besides meeting the requirements of one of the subsections of Rule 23(b), class certification requires that the applicant satisfy the requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy. See Fed. R. Civ. P. 23(a). Although our holding that Christ failed to meet the requirement of Rule 23(b)(2) is sufficient to reverse the class certification, we alternatively hold that the class fails for lack of typicality under Rule 23(a). The class as defined by the district court's certification order includes claims by persons from a number of states. As we explain infra, part III, these claims are determined by application of state law, and each state has a different law on the matter. Therefore, Christ's claims, which are determined by Florida's definition of "insurance," are not "typical of the claims of the class."

III.

After the MDL court erroneously granted class certification, it entered summary judgment for the plaintiff class on the merits[13] and remanded the case to the district court.  The district court then awarded the plaintiff class injunctive relief and $22 million in restitution or disgorgement under the Declaratory Judgment Act, characterizing such relief as "restitution or disgorgement of the illegal NFI premiums by which Beneficial was unjustly enriched."  Christ, 2006 U.S. Dist. LEXIS 58448, at *12.  We hold that the district court erred by invoking the Declaratory Judgement Act to award this remedy.

Putting aside a vague appeal to "justice,"[14] Christ's main argument in support of the district court's ruling is that because Congress did not expressly

_____

Fed. R. Civ. P. 23(a).

[13] In this appeal, we need not assess whether the MDL court erred in granting summary judgment on the merits for the plaintiff class.

[14] Although Christ indicates that his purported "right to actual damages [was] virtually eliminated" by our decision in Turner v. Beneficial Corp., 242 F.3d 1023, 1024 (11th Cir. 2001) (en banc) (holding that detrimental reliance is an element of a TILA claim for actual damages), he also claims that Turner has been thrown into question by the Supreme Court's holding in Bridge v. Phoenix Bond & Indemnity Co., ___ U.S. ___, 128 S. Ct. 2131, 2144, 170 L. Ed. 2d 1012 (2008), which held that first-party reliance is not a requirement to establish a violation of the Racketeer Influenced and Corrupt Organizations Act predicated on mail fraud. Consequently, he asserts that it would be "incongruous" if we were to hold that the district court could not "call upon the DJA and [its] inherent equitable powers to fashion a remedy."  The relationship between Bridge and Turner, if any, is not before us, and we decline to overturn Turner to attain what Christ calls "complete justice."

13

preclude other remedies, the district court was able to invoke the Declaratory Judgment Act and its inherent equitable powers to issue the injunction and award disgorgement and restitution. We cannot agree.

"The operation of the Declaratory Judgment Act is procedural only." Household Bank v. JFS Group, 320 F.3d 1249, 1253 (11th Cir. 2003)(quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240, 57 S. Ct. 461, 463, 81 L. Ed. 617 (1937)). Where federal court jurisdiction is otherwise proper, the Act permits a party to apply to a federal court for a declaration of an underlying right or relation rather than waiting for the adjudication of such rights in a traditional coercive action. See id. Though it is often said that the Act "enlarge[s] the range of remedies available in the federal courts," see Bauhaus USA, Inc. v. Copeland, 292 F.3d 439, 447 n.11 (5th Cir. 2002) (Wiener, J., dissenting) (quoting 10B Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2766 (3d ed. 1998)), such language refers to the Act's function as a procedural device. "[B]esides authorizing a declaratory judgment, the [Declaratory Judgment Act] does not create remedies otherwise unavailable to the plaintiffs" in the anticipated coercive action. Bolin, 231 F.3d at 977. In other words, further relief beyond a declaratory judgment or decree is permitted only to the extent that it is "necessary or proper." 28 U.S.C. § 2202. Here, the further

14

relief ordered by the district court—an injunction and an award of over $22 million as "restitution or disgorgement" of fees—was awarded to Christ both unnecessarily and improperly. Far from effectuating the declaration regarding the underlying TILA cause of action, it circumvented the express remedies provided by Congress in this context: actual damages (which Christ conceded he could not prove) or statutory damages (which Christ waived).

## V.

For the foregoing reasons, we VACATE the district court's certification of an injunctive class, VACATE the award of injunctive relief and "restitution or disgorgement," and REMAND the case to the district court with the instruction to enter an order consistent with this opinion.

SO ORDERED.