Valerie RUBINSTEIN, Plaintiff,

v.

DEPARTMENT STORES NATIONAL BANK, Defendant.

No. 12 Civ. 8054(AJN).

United States District Court, S.D. New York.

July 22, 2013.

Brian Lewis Bromberg, Michael Noah Litrownik, Bromberg Law Office, P.C., Harley Jay Schnall, Law Office of Harley J. Schnall, New York, NY, for Plaintiff.

Julia Beatrice Strickland, David Wesley Moon, Joseph Eric Strauss, Stroock & Stroock & Lavan LLP, Los Angeles, LA, for Defendant.

## MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge.

Plaintiff, Valerie Rubinstein ("Rubinstein"), brings this putative class action alleging that Defendant, Department Stores National Bank ("DSNB"), violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, by sending periodic statements containing incomplete billing rights notices. Defendant moved to dismiss or, in the alternative, to strike Plaintiff's request for $1,000,000 in statutory damages. For the reasons that follow, Defendant's motion to dismiss is DENIED and the motion to strike is GRANTED.

## I. STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in favor of the non-moving party. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir.2007). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.2010).

## II. BACKGROUND

The following facts are alleged in the complaint and assumed to be true for purposes of this motion.

Plaintiff is the holder of a Bloomingdales credit card issued by DSNB. (Compl. ¶¶ 11–12, 15). The periodic statement that Plaintiff received on approximately October 28 or October 29, 2011, did not contain an annual "long-form" billing rights notice, as required by 15 U.S.C. § 1637(a)(7). (Compl. ¶¶ 15–16, 35–38). Instead, she received a "short-form" notice with her monthly billing statement, which 12 C.F.R. § 1026.9(a)(2) allows creditors to distribute on a monthly basis as an alternative to the annual long-form notice mandated by the statute. (Compl. ¶¶ 35–38). The monthly short-form notice that Rubinstein received from the credit card company failed to comply with the requirements of 12 C.F.R. § 1026.9(a)(2) and the related Model Form G–4 in that it failed to provide the following notice:

> If you have a problem with the quality of goods or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. You have this protection only when the purchase price was more than $50 and the purchase was made in your home state or within 100 miles of your mailing address. (If we own or operate the merchant, or if we mailed you the advertisement for the property or services, all purchases are covered regardless of amount or location of purchase.)

76 Fed.Reg. 79838 (Dec. 22, 2011); *see also* Credit Card Statement, Compl. Ex. A (Dkt. No. 1 at 14).

Plaintiff does not allege that she suffered actual damages as a result of this omission. Instead, she brings the present action on behalf of herself and others similarly situated, seeking to recover $1,000,000 in statutory damages. (Compl. ¶ 39).

## III. DISCUSSION

DSNB argues that, even assuming that it violated 12 C.F.R. § 1026.9(a)(2), Plaintiff is not entitled to statutory damages for this violation. Defendant argues that because Plaintiff does not allege that she suffered actual damages, she has therefore failed to state a claim upon which relief may be granted. The Court disagrees because, for the reasons set forth below, statutory damages may properly be awarded for the alleged violation.

### A. *Plaintiff Is Entitled to Statutory Damages*

#### 1. Statutory Damages Under the TILA

■ The TILA only provides statutory damages for violations of certain specifically enumerated provisions. 15 U.S.C. § 1640(a). Courts in this district have consistently disallowed statutory damages for violations of provisions of the TILA that are not enumerated in Section 1640(a). *Turk v. Chase Manhattan Bank USA, N.A.*, 2001 WL 736814, at *2 (S.D.N.Y. June 11, 2001) (no statutory damages for violation of section of the statute not enumerated in Section 1640); *Kelen v. World Fin. Network Nat'l Bank*, 763 F.Supp.2d 391, 394–95 (S.D.N.Y.2011) (no statutory damages where complaint alleged violations of a regulation promulgated pursuant to a statutory provision not enumerated in Section 1640); *see also Brown v. Payday Check Advance, Inc.*, 202 F.3d 987, 992 (7th Cir.2000) (Section "1640(a) means what it says, that 'only' violations of the subsections specifically enumerated in that clause support statutory damages.").

■ However, in addition to rules codified in the United State Code, TILA grants rulemaking authority to the Consumer Financial Protection Bureau ("CFPB"):

to prescribe regulations to carry out the purpose of [TILA] ..... [S]uch regulations may contain such additional requirements, classifications, differentiations, or other provisions, and may provide for such **adjustments** and exceptions for all or any class of transactions, as in the judgment of the Bureau are necessary or proper to effectuate the purposes of this subchapter, to prevent circumvention or evasion thereof, or to facilitate compliance therewith.

15 U.S.C. § 1604(a) (emphasis added).[1] The regulation promulgated to enforce TILA is known as "Regulation Z," and is codified at 12 C.F.R. § 226.1, *et seq.*

▮ If a violated Regulation Z is promulgated pursuant to one of the provisions cited in Section 1640(a), courts have permitted an award of statutory damages. *Schuster v. Citibank (South Dakota), N.A.,* 2002 WL 31654984, at *3–4 (S.D.N.Y. Nov. 21, 2002). By contrast, if a court is unable to conclude that the violated regulation was promulgated pursuant to a provision listed in Section 1640(a), statutory damages have been disallowed. *Schnall v. HSBC Bank Nevada, N.A.,* 2013 WL 1100769, at *4 (S.D.N.Y. Mar. 18, 2013).

2. The Violation Alleged by Rubinstein Derives from a Regulation Promulgated Pursuant to a Provision Cited in § 1640(a)

▮ The dispute between the parties in this case centers on whether the allegedly violated regulation was promulgated pursuant to a provision listed in Section 1640(a), i.e. a violation that may result in statutory damages.[2]

One such provision listed in Section 1640(a) is 15 U.S.C. § 1637(a)(7). This provision requires *annual* disclosures of information on how to correct billing errors[3] and states that this information should be sent to customers "in a form prescribed by regulations of the Bureau [i.e. Regulation Z]."

Section 1637(a)(7)'s corresponding Regulation Z provision is found in 12 C.F.R. § 1026.9(a). Section 1026.9(a)(1) requires an annual disclosure of statements required by Section 1026.9(b)(5)(iii), which in turn requires a disclosure of a "statement of billing rights" as outlined in Sections 1026.12(c) and 1026.13. Section 1026.9(b)(5)(iii) further requires the disclosure to be "substantially similar" to Model Form G–3(A). This is referred to as an "annual long-form" billing rights notice.

Section 1026.9(a)(2) allows a creditor, as an alternative to the annual "long-form" disclosure, to instead submit a short-form disclosure "periodically," i.e. with each *monthly* statement. That short-form must be "substantially similar" to "Model Form G–4 or Model Form G–4(A)." 12 C.F.R. § 1026.9(a)(2). As discussed in Section "II" above, the short-form disclosure provided to Rubinstein by DSNB was not "substantially" similar to Model Form G–4

---

1. Prior to the Dodd–Frank Act Wall Street Reform and Consumer Protection Act, Pub. L. No. 111–203, the authority to promulgate these regulations resided with the Federal Reserve Board ("FRB"). The CFPB's regulations are, for purposes of this case, materially identical to those previously promulgated by the FRB.

2. Though the complaint includes a request for injunctive relief, Plaintiff's opposition motion does not contest Defendant's assertion that the TILA does not provide for injunctive relief. *See Christ v. Beneficial Corp.,* 547 F.3d 1292, 1298 (11th Cir.2008) ("[I]njunctive relief is not a remedy available under TILA.").

3. The statute requires annual disclosure of "the protection provided by section[] 1666" of Title 15, and Section 1666, in turns, discusses corrections of billing errors.

in that it excluded a key advisement, and Section 1026.9(a)(2) was therefore violated.

Defendant's core contention in support of its motion to dismiss is that this alternative monthly short-form disclosure requirement in subsection (a)(2)—which is found only in the regulation but which apparently presents an alternative to the annual long-form disclosure requirement codified in the statute—was not promulgated pursuant to a section of the TILA listed in Section 1640(a), and violations of this regulation therefore may not result in awards of statutory damages. Put another way, Defendant argues that if a creditor attempts to meet its Section 1637(a)(7) obligations by sending out an annual "long-form" notice, and that "long-form" is deficient, then statutory damages may be awarded. But, Defendant contends, if the creditor takes advantage of the alternative monthly short-form exception—an alternative that is provided for by the regulations but not mentioned in the statute—any violation of that short-form may not result in an award of statutory damages. In effect, Defendant argues that the monthly short-form notice provides a safe harbor, violations of which are immune from private actions available to address violations of the alternative annual long-form warning.

However, the Court concludes that Section 1026.9(a) allowance for compliance with the mandate of § 1637(a)(7) through the distribution of monthly short-form notices is promulgated pursuant to § 1637(a)(7) and is an example of the kind of "adjustment" designed to "effectuate the purposes of" the TILA that § 1604 empowers the CPRB to make. Therefore, the regulation that was violated—the monthly short-form regulation—was promulgated pursuant to a provision listed in § 1640(a). Given that conclusion, the Court is required to hold that statutory damages are permitted. *See Schuster*, 2002 WL 31654984, at *3–4.

It is true, as Defendant notes, that there are no known statements by the CFPB or FRB stating that Section 1026.9(a) was specifically promulgated pursuant to Section 1637(a)(7). However, even in the absence of an explicit statement, there can be little doubt that Section 1026.9(a) was promulgated pursuant to Section 1637(a)(7). Indeed, Defendant, who does not aver that it ever mailed out the annual long-form notice, maintains that it nonetheless never violated Section 1637(a). (Reply at 5) (Arguing that there was no violation of a regulation promulgated pursuant to a provision listed in Section 1640(a)). The only way that Defendant could plausibly maintain that it did not violate Section 1637(a)(7), even in spite of the absence of an annual long-form notice, would be through compliance with the alternative monthly short-form notice provided for in the regulation. Because Defendant elected to comply with Section 1637(a)(7) through use of a periodic short-form notice, its failure to comply with the requirements of the monthly short-form constitutes a failure to comply with a regulation promulgated pursuant to Section 1637(a).

Defendants argue that Judge Crotty's decision in *Schnall v. HSBC Bank Nevada, N.A.*, 2013 WL 1100769, at *4 (S.D.N.Y. Mar. 18, 2013), compels the conclusion that statutory damages are inappropriate in this case. But *Schnall* is distinguishable. In *Schnall*, the violated regulation required disclosure of incurred year-to-date interest charges and fees in each periodic statement provided to consumers. *Schnall*, 2013 WL 1100769, at *1. The plaintiff in *Schnall* argued that the violated regulation was promulgated pursuant to a provision in the TILA requiring that each billing statement provide "the amount of any finance charge

added to the account during the period, itemized to show the amounts, if any, due to the application of percentage rates and the amount, if any, imposed as a minimum or fixed charge." 15 U.S.C. § 1637(b)(4). Judge Crotty concluded that the statutory provision and the regulation were "not identical or substantially similar" and that the plaintiff's argument to the contrary was nothing more than a "conclusory assertion." Judge Crotty held that "when the Regulation Z provision at issue was not clearly promulgated pursuant to one of the subsections Congress specifically identified as giving rise to statutory damages," the Court should not allow statutory damages. *Id.* at *5. Judge Crotty was clear that he did not intend to establish a "blanket prohibition" on statutory damages for all violations of Regulation Z, but instead only addressed "the specific section of TILA and provision of Regulation Z at issue here in the context of this case." *Id.*

The Court is in agreement with Judge Crotty's analysis. However, unlike *Schnall*, in the present case, the relationship between the allegedly violated regulation and the statutory provision is more obvious. The statutory provision of the TILA at issue in this case, 15 U.S.C. § 1637(a)(7), requires an annual disclosure of information related to correcting false billing "in a form prescribed by regulations of the" CPRB. And the allegedly violated regulation, 12 C.F.R. § 1026.9(a), requires either annual disclosure of that information through a prescribed form, or periodic disclosure of similar information in an alternative, abbreviated form. That is, as anticipated by the language of the statute, 12 C.F.R. § 1026.9(a) provides two potential forms that can be used to satisfy the requirements of 15 U.S.C. § 1637(a)(7), each one to be delivered by creditors to their customers at different, mandated intervals. The Court does not believe that

Congress or the regulatory agency intended there to be statutory damages for violations if a creditor chooses one of these options but not the other.

■ Defendant further argues in its reply that Plaintiff raises new allegations in its opposition brief that should not be relied upon because they are not present in the complaint. This argument is without merit. The complaint simply alleges a violation of the TILA, and explains that the violation was through failure to comply with regulations that implement 1637(a)(7). (Compl. ¶¶ 27–39). The factual allegations are clear, simple, and essentially undisputed. To the extent that Plaintiff may have presented a slightly altered *legal* argument in its opposition brief than may appear on the face of the complaint—and it is not at all clear that Plaintiff has done so— alteration of a legal argument does not constitute an improper "amendment" of the complaint.

In short, the regulation that Defendant allegedly violated, 12 C.F.R. § 1026.9(a), was promulgated pursuant to 15 U.S.C. § 1637(a)(7). Because 15 U.S.C. § 1637(a)(7) is listed in 15 U.S.C. § 1640(a), an award of statutory damages is permissible following a violation 12 C.F.R. § 1026.9(a).

B. *Plaintiff's Request for $1,000,000 in Statutory Damages Should Be Stricken*

Defendant alternatively moves to strike Plaintiff's demand for $1,000,000 in statutory damages. Defendant contends that Section 1416 of the Dodd–Frank Act ("the Act"), which increased the statutory damages available for this kind of TILA action from $500,000 to $1,000,000, was not in effect at the time of the alleged violation, which occurred on or about October 30, 2011, (Compl. ¶ 33), or even when the com-

plaint in this matter was filed on October 28, 2012. Plaintiff presents an alternative reading of the legislation and argues that the statutory damages cap had already risen by the time of the alleged violation. The only cases cited by the parties that are on point support Defendant's position that the increased statutory cap was not in effect at the time of the violation alleged in the complaint. *Hummel v. Hall*, 868 F.Supp.2d 543 (W.D.Va.2012); *Nelson–Ramsey v. Deer Valley Auto Sales & Fleet Servs., Inc.*, 2012 WL 2990762 (D.Ariz. July 20, 2012). For the reasons that follow, the Court finds *Hummel* to be persuasive and therefore concludes that the increase in the statutory damages cap occurred after the violation alleged in the complaint.

1. The Effective Date of the Act

■ There is ambiguity in the text of the Act as to when the provision raising the statutory damage cap for this kind of action was to take effect. On the one hand, Section 4 of the Act provides that, "*[e]xcept as otherwise specifically provided* in this Act or the amendments made by this Act, this Act and such amendments shall take effect 1 day after the date of enactment of this Act." Dodd–Frank Wall Street Reform and Consumer Protection Act, PL 111–203, July 21, 2010, 124 Stat 1376 (emphasis added). Plaintiff would have the Court conclude that, pursuant to this provision, the statutory damage increase became effective on July 22, 2010, one day after President Obama signed it into the law. (156 Cong. Rec. D838–01, 2010 WL 2868168).

On the other hand, and in support of Defendant's contention, Section 1400(c) of the Act, titled "REGULATIONS; EFFECTIVE DATE," states:

(1) REGULATIONS—The regulations required to be prescribed under this title or the amendments made by this title shall—

(A) be prescribed in final form before the end of the 18–month period beginning on the designated transfer date; and

(B) take effect not later than 12 months after the date of issuance of the regulations in final form.

(2) EFFECTIVE DATE ESTABLISHED BY RULE—Except as provided in paragraph (3), a section, or provision thereof, of this title shall take effect on the date on which the final regulations implementing such section, or provision, take effect.

(3) EFFECTIVE DATE—A section of this title for which regulations have not been issued on the date that is 18 months after the designated transfer date shall take effect on such date.[4]

Dodd–Frank Wall Street Reform and Consumer Protection Act § 1400(c).

This provision suggests that the effective dates for provisions contained in title XIV of the Act, such as the increase in the statutory damages cap, are "otherwise specifically provided for" and therefore not subject to Section 4's general July 22, 2010 effective date.

Nonetheless, the text of Section 1400(c)(3), which requires that a section of title XIV "for which regulations have not been issued on the date that is 18 months after the designated transfer date shall take effect on such date,"[5] is ambiguous as to whether this eighteen month marker

---

4. The designated transfer date referred to in the Act was made July 21, 2011. 18 months from this date would have been January 21, 2013.

5. The designated transfer date referred to in the Act was made July 21, 2011. Eighteen months subsequent to that date was January 21, 2013.

applies only to that section of title XIV for which regulations are required and have not been issued, or whether it applies to all sections for which regulations have not been issued, regardless of whether they are required.

Given this ambiguity in the text, the Court next turns to the structure of Section 1400(c) and the relationship between the constituent parts to see if they shed light on the meaning of the text. The Court agrees with the *Hummel* court that such an analysis does not clarify the proper way to read Section 1400(c)(3). *Hummel*, 868 F.Supp.2d at 552–53.

The Court next turns to the legislative history. *Fed. Housing Fin. Agency v. UBS Americas Inc.*, 712 F.3d 136, 141 (2d Cir.2013) ("If we conclude that the text is ambiguous, we will look to legislative history and other tools of statutory interpretation."). Statements made by Senator Dodd shortly before the legislation was enacted are directly on point. Senator Dodd stated:

> There are a number of provisions in title XIV for which there is not a specified effective date other than what is provided in section 1400(c). It is the intention of the conferees that provisions in title XIV that do not require regulations become effective no later than 18 months after the designated transfer date for the CFPB, as required by section 1400(c). However, the conferees encourage the Federal Reserve Board and the CFPB to act as expeditiously as possible to promulgate regulations so that the provisions of title XIV are put into effect sooner.

156 Cong. Rec. S5928 (daily ed. July 15, 2010) (statement of Senator Dodd). Senator Dodd's statement leads to the conclusion that Section 1400(c) was intended to apply both to provisions of title XIV where regulations were required and not issued *and* to provisions of title XIV where regulations were not required.

In light of this legislative history, the Court agrees with the *Hummel* court and concludes that the provision of the Act raising the maximum statutory damages award for this kind of case was subject to Section 1400(c)(3) and therefore did not take effect until January 21, 2013.[6]

\*   \*   \*   \*   \*   \*

Because the Court concludes that the Act only raised the maximum statutory damage award for the type of violation alleged in the complaint as of January 21, 2013, and because the only alleged violation occurred on or about October 30, 2011, Defendant's motion to strike the complaint's prayer for statutory damages of $1,000,000 is GRANTED. The maximum available statutory award, based on the present allegations, is $500,000. Plaintiff argues that because the complaint alleges ongoing violations through the present day, striking the prayer for $1,000,000 in statutory damages in premature. If, during the course of discovery, it becomes known that there were violations continuing through a period subsequent to January 21, 2013, the Court will consider further briefing on whether such a violation can be considered as part of this case and whether the prayer for $1,000,000 in statutory damages should be reinstated.

---

**6.** Like the *Hummel* court, this Court concludes that the three-week gap in the effectiveness of the Protect Tenants at Foreclosure Act ("PTFA") that is created by subjecting all of title XIV to Section 1400(c)(3) does not require the conclusion that Section 1400(c)(3) should be narrowed beyond the scope that is indicated in Senator Dodd's statement. This anomaly does not resolve the ambiguity found in the Act, but instead only further contributes to it.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED and the motion to strike the prayer for $1,000,000 in statutory damages is GRANTED. A separate order will issue scheduling an initial pretrial conference.

SO ORDERED.